# 13-1000-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



MONA T. KANCIPER,

*Plaintiff-Appellant,*

*v.*

SUFFOLK COUNTY SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,
INCORPORATED, ROY GROSS, GERALD LAUBER, SHAWN A. DUNN,
MICHAEL NORKELUN, JOHN AND JANE DOES 1-10,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the Eastern District of New York (Central Islip)*

## BRIEF FOR PLAINTIFF-APPELLANT
## WITH SPECIAL APPENDIX

Steven J. Hyman
Alan E. Sash
MCLAUGHLIN & STERN, LLP
*Attorneys for Plaintiff-Appellant*
260 Madison Avenue
New York, New York 10016
212-448-1100

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . ii-iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED ON APPEAL . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . 6

    The State Action . . . . . . . . . . . . . . . . . . 9

    The Federal Action . . . . . . . . . . . . . . . . . 11

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . 12

  I.   (a)   The District Court Erred In Dismissing
           Kanciper's Claim That CPL §2.10(7) Is
           Unconstitutional Under The Constitution
           Of The United States . . . . . . . . . . . . 12

      (b)   The District Court, Under *Brillhart*,
           Should Have Stayed, Rather Than Dismissed,
           Kanciper's Claims Under The Constitution
           Of The United States . . . . . . . . . . . . 24

  II.   The District Court Should Have Applied The
      *Colorado River* Doctrine Instead Of The Claim
      Splitting Doctrine In Connection With
      Plaintiff's Civil Rights Claim . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . 37

## TABLE OF AUTHORITIES

**Page(s)**

## Cases

Alliance of Am. Insurers v. Cuomo
854 F.2d 591 (2d Cir.1988) . . . . . . . . . . . . . . . . . 32

Am. Stock Exchange, LLC v. Mopex, Inc.,
215 F.R.D. 87 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . 30

AmBase Corp. v. City Investing Co. Liquidating Trust
326 F.3d 63 (2d Cir. 2003) . . . . . . . . . . . . . 27, 30, 31

Brillhart v. Excess Ins. Co. of America,
316 U.S. 491 (1942) . . . . . . . . . . . . . . . . . . . *passim*

Bull & Bear Group, Inc. v. Fuller
786 F.Supp. 388 (S.D.N.Y. 1992) . . . . . . . . . . . . . . 30

Colorado River Water Conservation Dist. v. United States
424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . *passim*

Dittmer v. County of Suffolk,
146 F.3d 113, 118 (2d Cir. 1998) . . . . . . . . . . . 20, 35

Dow Jones & Co. vs. Harrods Ltd.
346 F.3d 357, 359 (2d Cir. 2003) . . . . . . . . . . . . . 22

Dyno v. Village of Johnson City, 240 Fed.Appx. 432 (2007) . . 30

Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) . . . . . 31

Gen. Elec. Co. v. N.Y. State Dept. of Labor
936 F.2d 1148 (2d Cir. 1991 . . . . . . . . . . . . . . . . 18

Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.
296 F.3d 982 (10th Cir. 2002) . . . . . . . . . . . . . . . 29

Katz v. Gerardi, 655 F.3d 1212 (10th Cir. 2011) . . . . . 4, 29

Migra v. Warren City School District Board of Education
465 U.S. 75 (1984) . . . . . . . . . . . . . . . . . . . . 30

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.
460 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . 32, 33

ii

<u>Niagara Mohawk Power Corporation v. Hudson River-Black River</u>
<u>Regulating District,</u> 673 F.3d 84 (2d Cir. 2012) . . . . . *passim*

<u>Savoy of Newburg, Inc. v. City of Newburgh</u>
242 Fed.Appx. 716, 718 (2d Cir. 2007) . . . . . . . . . . . 31

<u>Steinberg v. Nationwide Mutual Ins. Co.</u>
418 F.Supp.2d 215 (E.D.N.Y. 2006) . . . . . . . . . . . . 4, 27

<u>Stone v. Williams</u>, 970 F.2d 1043, 1048 (2d Cir. 1992) . . . 25

<u>Suss v. ASPCA</u>, 823 F.Supp. 181 (S.D.N.Y. 1993) . . . . . 12, 18

<u>Suss v. ASPCA</u>, 855 F.Supp. 66 (S.D.N.Y. 1994) . . . . 12, 14, 18

<u>Village of Westfield v. Welch's</u>,
170 F.3d 116 (2d Cir.1999) . . . . . . . . . . . . . . . 32, 33

<u>Wilton v. Seven Falls Company</u>, 515 U.S. 277 (1995) . . . *passim*

<u>Woodford v. Comty. Action Agency</u>,
239 F.3d 517 (2d Cir. 2001) . . . . . . . . . . . . . . . 33, 34

<u>Youell v. Exxon Corporation</u>, 74 F.3d 373 (2d Cir.),
<u>cert. den.</u>, 517 U.S. 1251 (1996) . . . . . . . . . . . . *passim*

**<u>Statutes</u>**

CPLR 2505(a) . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. 1291 . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. 2201 . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. 1983 . . . . . . . . . . . . . . . . . . 1, 2, 11, 12

New York State Criminal Procedure Law §2.10(7) . . . . . *passim*

**<u>Scholarly Article</u>**

"<u>Enforcing Animal Welfare Statutes: In Many States, It's Still</u>
<u>the Wild West</u>"
Elizabeth Rumley and Rusty Rumley (San Joaquin Agricultural Law
Review, Spring 2012) . . . . . . . . . . . . . . . . . . . 19

## Jurisdictional Statement

The District Court had subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. 2201 and 42 U.S.C. 1983 because Mona Kanciper (Kanciper) commenced the within action claiming, *inter alia*, that the Suffolk County Society for the Prevention of Cruelty to Animals, Inc. (SCSPCA) and its part-time volunteers violated her federally protected civil rights and that New York State Criminal Procedure Law §2.10(7) is unconstitutional in violation of the Constitution of the United States.

The basis for the court of appeals' jurisdiction is 28 U.S.C. 1291 because the District Court has issued a final decision, order and judgment dismissing all of Kanciper's claims without prejudice and requiring her to re-file her federal claims in state court.

The District Court's final decision and order was docketed on February 23, 2013 and the Notice of Appeal was timely filed and docketed on March 18, 2013.

## Issues Presented on Appeal

(1)      Whether the District Court misapplied the Brillhart doctrine by dismissing an important and novel federal constitutional question in favor of a pending state court

1

proceeding which did not allege any federal questions.  The standard of review on this issue is abuse of discretion.

(2)      Whether, under <u>Brillhart</u>, the District Court should have stayed, in lieu of dismissing, the important and novel federal constitutional questions at issue pending resolution of the state court proceeding which did not allege any federal question.  The standard of review on this issue is abuse of discretion.

(3)      Whether the District Court should have applied the <u>Colorado River</u> doctrine instead of the "Claim Splitting Doctrine" in connection with Kanciper's civil rights claim under 42 U.S.C. 1983.  The standard of review on this issue is *de novo*.

### <u>Preliminary Statement</u>

There are two central issues in this appeal that present significant issues as to when the District Court should decline to exercise federal jurisdiction in causes of action arising under §1983.  The first involves the District Court's determination under the doctrine of claim splitting to dismiss a §1983 damage action and send it to state court where Kanciper has a pending state court tort damage action against some of the same parties arising from the same incident.  The second

2

involves a declaratory judgment action by Kanciper seeking to
have New York State Criminal Procedure Law 2.10(7) declared
unconstitutional on its face and as it applied to the grant of
peace officer status to the SCSPCA which the District Court
likewise dismissed under the Brillhart abstention doctrine.  In
each instance we submit the District Court erred in the
application of the particular doctrine it enunciated for its
decision and in the drastic result of dismissing Kanciper's
federal causes of action and sending them to state court.

At the outset it must be emphasized that the result of the
District Court's decision was to deprive Kanciper access to the
federal courts to adjudicate the substantial federal and
constitutional issues raised by her complaint.  While doctrines
of judicial economy and abstention may under some circumstances
dictate such a harsh result, we submit that in the case at bar
dismissal of Kanciper's federal claims cannot be sustained under
the doctrines upon which the District Court based its decision.

As will be argued below, we believe the District Court
misapplied the claim splitting doctrine both as to when such a
doctrine is applicable and what factual and legal similarities
are appropriate to warrant dismissal of a federal question by a
federal court.  The claim splitting doctrine has generally been

3

held to apply where federal action is brought involving issues that could have been litigated in a prior state court action that went to final judgment. The District Court acknowledging that there was no authority in this Circuit to apply such a doctrine where the state court action is still pending, relied on Tenth Circuit cases which we submit are readily distinguishable and does not justify dismissal in this case.

What is particularly disturbing about the District Court's decision as to the §1983 damage claim is that in a prior decision it recognized that the claim splitting doctrine was inapplicable to the situation at bar. As the District Court stated in Steinberg v. Nationwide Mutual Ins. Co., 418 F.Supp.2d 215, 223 (E.D.N.Y. 2006):

> claim splitting does not apply to parallel state and federal action. Courts have consistently declared that 'where there is concurrent jurisdiction, however, it is permissible for a plaintiff to file parallel state and federal actions simultaneously.' … the proper question in a case involving parallel state and federal actions is whether abstention under Colorado River is appropriate.

The District Court offers no rationale for its disregard of its prior decision on the claim splitting doctrine. The Tenth Circuit opinion in Katz v. Gerardi, 655 F.3d 1212, 1217-18 (10th Cir. 2011) notwithstanding, we submit that the District Court's

4

opinion in Steinberg concisely and clearly sets forth the
correct standard of analysis.  We further submit that had the
District Court then applied the Colorado River standard as so
recently clarified in the Niagara Mohawk Power Corporation v.
Hudson River-Black River Regulating District, 673 F.3d 84 (2d
Cir. 2012) case by this court, Kanciper's §1983 damage claim
would have been sustained and the federal courts remained open
to her.

    As for the declaratory judgment part of the action, we
submit that there is even less authority for the District
Court's decision to dismiss this cause of action and force
Kanciper to vindicate her federal claim in a state court.  The
district court's reliance on Brillhart to justify dismissal is
misplaced.  This doctrine, further clarified by Wilton, has no
application to an action filed in federal court challenging the
validity of a state statute under the United States
Constitution.  Brillhart/Wilton stands for the proposition that
while state action is pending, a federal court should not
involve itself in a parallel state action interpreting state law
claims.  However, that is not the case presented here.  Rather,
Kanciper's cause of action for a declaratory judgment raises
only federal constitutional issues that in no way depend on or

5

relate to her pending state tort claims.

As with the first cause of action, <u>Colorado River</u> is the only appropriate standard which could apply here and with regard to this second cause of action, we contend there is no basis to dismiss Kanciper's constitutional challenge to the statute under any reading of <u>Colorado River</u>. It would appear that the District Court in this case has failed to follow the core premise of <u>Colorado River</u> that a litigant's access to the federal courts should be favored and only curtailed in the most limited of circumstances. As discussed below, we submit that Kanciper's §1983 claim was appropriately brought in the District Court and notwithstanding the existence of a state court tort action, should be permitted to proceed in the forum of her choice.

**Statement of Facts**

The claims in both the state action and the federal action that is the subject matter of this appeal arose out of the SCSPCA's investigation and search of Kanciper's horse farm and home resulting in her prosecution for alleged animal cruelty and endangering the welfare of a minor. (A. 16-40, 131-153) Kanciper was acquitted at trial of both the animal cruelty charges and one count of endangering the welfare of a minor.

6

(A. 39-40)  On appeal, the appellate division, second
department, dismissed the remaining endangering the welfare of a
minor charge against Kanciper.  (A. 291-292)  However, as will
be more fully described below, while there are common facts in
both complaints, the parties, jurisdiction requirements, causes
of action and remedies are different.  (A. 11-56, 127-165)
Indeed, two lawsuits arising from these facts were inevitable
because there is no federal jurisdiction regarding the claims
against the non-SCSPCA actors for defamation, tortious
interference with prospective business relations, and
intentional infliction of emotional distress.  (A. 130)

The facts common to both complaints can be summarized as
follows:

Kanciper operates a horse farm and pony camp in Suffolk
County where she also lives.  In 2009, certain individuals
complained to the SCSPCA about Kanciper's treatment of her
animals.  The SCSPCA, a private organization with no government
oversight, is authorized by New York State Criminal Procedure
Law §2.10(7) to designate its part-time volunteers as peace
officers limited to enforcement of the state agricultural laws
relating to animals.  The SCSPCA then commenced an investigation

7

into Kanciper in 2009 which it closed finding no basis for the allegations against her. (A. 17-28, 133-138)

Nevertheless, it later reopened its inquiry of Kanciper based upon further allegations by the same individuals. This time the SCSPCA decided to obtain search warrants to search Kanciper's farm and home. These warrants claimed that Kanciper had violated both the animal cruelty laws and the state penal laws relating to endangering the welfare of a minor, although the SCSPCA volunteers lacked any authority to enforce the latter purported violation. (A. 28-38, 136-147)

After having obtained the warrants, the SCSPCA using heavy earth moving equipment searched Kanciper's farm and home causing damage thereto. Thereafter, the Suffolk County District Attorney's Office convened a grand jury which indicted Kanciper for the crimes of animal cruelty involving three of her dogs and the crime of endangering the welfare of a child. (A. 35, 38, 39, 155) In 2011, Kanciper went to trial and was acquitted of the animal cruelty charges but was convicted of a misdemeanor of endangering the welfare of a minor because she administered a tranquilizer to her dog in front of a 12 year old child. (A. 39-40) The appellate division vacated this conviction and dismissed the charges in their entirety. (A. 291-292)

8

Since there are facts common to both the federal and state actions, Kanciper offered to consolidate all of the state law claims against the SCSPCA into the federal action but the SCSPCA refused to do so. (A. 264-265) In response to Kanciper's offer to consolidate, the SCSCPA moved to dismiss Kanciper's federal action under the claim splitting doctrine. (A. 57-58)

**The State Action**

Kanciper, her not for profit corporation (New York Horse Rescue Corporation), and her business company (M. Butler Farm, LLC) commenced an action in 2011 against the SCSPCA and other individuals alleging various tort claims under state law. (A. 127-165) The complaint contains nine causes of action; of which six are directed at the SCSPCA and two of its volunteers, and three of which are directed at the four individuals who allegedly complained about Kanciper to the SCSPCA and made false on-line statements against her. (A. 127-165) The entire action sounds in common law tort under state law.

The causes of action against the SCSPCA and its two volunteers are comprised of abuse of process, negligence, tortious interference with prospective business, fraud, negligent misrepresentations and intentional infliction of emotional distress. (A. 153-159) Although the state complaint

9

makes reference to the search warrant obtained by the SCSPCA, the gravamen of the causes of action with regard to it are that the SCSPCA defendants: (a) obtained the warrant to injure and interfere with the plaintiffs' property and business (A. 153-154); (b) were negligent in obtaining the warrants and in executing them causing damage to the plaintiffs (A. 154-155); (c) intentionally interfered with plaintiffs' business without reasonable justification (A. 155-157); (d) that the representations made about the plaintiffs to the courts were reckless or intentionally false (A. 157); or (e) negligently incorrect (A. 158); and (f) that they intended to cause the plaintiffs emotional distress.  (A. 158-159)

As for the non-SPCA actions, the Complaint alleges these four individuals (a) tortiously interfered with plaintiffs' business (A. 160-161); (b) defamed plaintiffs (A. 161); and (c) intentionally inflicted emotional distress on plaintiffs. (A. 162).

As of the filing of the federal claim, the state action was in the early stages of initial disclosure.  No motions directed to the pleadings or other substantive motions had been made or considered.

10

**The Federal Action**

In 2012, Kanciper filed a three count federal complaint in the Eastern District seeking damages under §1983 for certain civil rights violations and to have §2.10(7) of the New York Criminal Procedure Law declared in violation of the United States and state constitutions on its face and as applied.[1]  (A. 11-56)

The parties in the federal action are different than those in the state action.  (A. 11, 127)  Kanciper, individually, is the sole plaintiff in the federal action.  (A. 11)  While the SCSPCA, Gross and Norkelun are named in both actions, two additional SCSPCA volunteers (Lauber and Dunn) have been named in the federal action that are not named in the state action. (A. 11, 127)  Of most significance is the fact that none of the non-SCSPCA defendants in the state action are named as defendants in the federal action, nor could they have been because there is no federal jurisdiction over them.  (A. 11, 127)

---

[1] There is also currently pending in the Eastern District a related civil rights action against the Suffolk County District Attorney's Office that was filed prior to the District Court's decision.  The docket number of the related action in the District Court is 13-cv-00871.  (A. 293)

11

The three causes of action in the federal complaint involve claims only relating to the constitutionality of the statute granting peace officer status to the SCSPCA volunteers and claims of Kanciper solely limited to §1983.[2] (A. 11-56) The federal claims raised herein are important and novel issues never before addressed by the Second Circuit.[3]

**LEGAL ARGUMENT**

**I. (a) The District Court Erred in Dismissing Kanciper's Claim that CPL §2.10(7) is Unconstitutional Under the Constitution of the United States**

Kanciper's first cause of action alleges that New York State Criminal Procedure Law §2.10(7) (CPL §2.10(7)) is unconstitutional because it unlawfully delegates to a private advocacy group police powers to investigate, search, seize and arrest individual citizens of the United States in derogation of the Fourth and Fifth Amendments as incorporated in the

---

[2] One of these causes of action raised a supplemental claim under the New York State Constitution but we are not appealing the dismissal of that claim. (A. 50-54)

[3] Only Judge Broderick in Suss v. ASPCA, 855 F.Supp. 66 (S.D.N.Y. 1994) addressed a similar issue. In Suss, Judge Broderick held that delegating sovereign governmental power to non-neutral private parties (the ASPCA) violates the Fourth Amendment. Id. at 67. He further held that "[f]or an interested party to make decisions utilizing governmental authority is anathema to due process." Suss v. ASPCA, 823 F.Supp. 181, 188 (S.D.N.Y. 1993).

12

Fourteenth Amendment to the Constitution of the United States. (A. 40-44)

In particular, Kanciper alleged that neither the officers nor directors of SCSPCA are required to swear to uphold the Constitution of the United States and that the SCSPCA's chain of command ends with a private Board of Directors who are neither chosen by the government, elected by the people, nor overseen by the government. (A. 17-19) While it is uncontested that the exercise of the police power by the State for the good and welfare of its citizens provides for a legitimate governmental police force that has the prerogative to investigate, search, seize and arrest, there is no such right to an unregulated private advocacy organization like the SCSPCA with no governmental control or oversight.

The federal complaint further alleges that SCSPCA does not require that its volunteers or board members/officers be citizens of the United States and there are no minimum qualifications for the top two law enforcement positions at SCSPCA. (A. 43) In the end, CPL §2.10(7) has enabled the SCSPCA to run its own private law enforcement agency with police powers without any oversight or supervision from the state government. (A. 20-22)

13

Notwithstanding these allegations and the application of federal law to resolve them, the District Court refused to hear the case under the Brillhart abstention doctrine and essentially referred the matter to state court for disposition holding sua sponte that "the suit involves a state statute", "[i]t is not our function to find our way through a maze of [state] statutes and decisions....", and "the claims before this Court can better be settled in the pending state proceeding…" (SPA. 39) It should be noted that the SCSPCA defendants did not raise the Billhart doctrine. (A. 57-58)

We respectfully submit that the District Court's decision was error. As set forth more fully below, the declaratory judgment claim at issue involves substantial issues of federal constitutional law and that a court within this Circuit has already adjudicated a similar issue. See, Suss v. ASPCA, 855 F.Supp. 66, 67 (S.D.N.Y. 1994), discussed infra at 20-21.

More than seventy years ago, the Supreme Court in Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942), in the context of diversity jurisdiction held that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in

14

a state court presenting the same issues, *not governed by federal law*, between the same parties." (emphasis added).

The Supreme Court fine-tuned the Brillhart doctrine in Wilton v. Seven Falls Company, 515 U.S. 277 (1995). In Wilton, the District Court's jurisdiction was based on diversity as well and no federal question was presented. On appeal, the Supreme Court was asked to determine, among other things, what standard of review an appellate court should apply in reviewing a District Court's decision to stay an action based on the Brillhart doctrine. Id. at 279. After analyzing different approaches, the Supreme Court held that the proper standard of review is abuse of discretion.

Notably, Wilton specifically left open "the outer boundaries of that discretion in other cases, for example, cases *raising issues of federal law* or cases in which there are not parallel sate proceedings." Id. at 290. (emphasis added). The Second Circuit answered that open question in Youell v. Exxon Corporation, 74 F.3d 373 (2d Cir.), cert. den., 517 U.S. 1251 (1996) holding that "[e]ven when made under the more discretionary Brillhart doctrine, a decision to abstain in this case would constitute an abuse of discretion in light of the important federal question presented." Youell at 374.

15

In Youell, Exxon sued the Underwriters in a Texas state court alleging state common law and state statutory claims. Id. at 375. The Underwriters, in turn, filed their own federal lawsuit against Exxon in the Southern District of New York seeking a declaratory judgment that they were not liable to Exxon raising questions of federal admiralty law. Id.

Applying Wilton and Brillhart, the Second Circuit stated:

[t]hough Brillhart left the exact contours of a district court's discretion to be molded by future cases, it 'indicated that, at least, where another suit involving the same parties and presenting opportunity for ventilation of *the same state law issues* is pending in state court, a district court might be indulging in gratuitous interference, if if permitted the federal declaratory judgment to proceed. Underlying the Brillhart decision was the Court's concern that it was being called upon to pronounce independently upon *state* law.

Youell at 375 (emphasis in original) citing Brillhart at 497.

The Second Circuit distinguished Wilton in Youell holding that Wilton is "fundamentally distinct" because only state law claims were involved. On the other hand, Youell involved "novel questions of federal law" which "is quintessentially our obligation" to decide. Id. at 375. The Second Circuit held that "[f]ederal adjudication of this issue will not constitute 'gratuitous interference with the orderly and comprehensive disposition of the state court litigation. Nor can this issue

16

'better be settled' in Texas state court: "A federal question of first impression must all but demand that the federal court hear the case …"  Id. (citations omitted)  "Moreover, it bears emphasis that the Wilton Court specifically declined 'to delineate the outer boundaries of Brillhart discretion in cases raising issues of federal law.'"  Id. (citations omitted). Accordingly, the Second Circuit held that the decision to dismiss Underwriters' declaratory judgment action in federal court was an abuse of discretion.  Id.

The District Court here acknowledged the Second Circuit's decision in Youell yet nonetheless held that the case at bar was "highly distinguishable". (SPA. 38)  According to the District Court, it was "being called upon to pronounce independently upon state law" and that the federal claims presented here can "better be settled in the pending state proceeding …" (SPA. 39) We respectfully submit that the District Court misinterpreted what was being asked of it.  Like the Underwriters in Youell, Kanciper asked the District Court to determine a federal question – whether CPL §2.10(7) violates the Constitution of the United States.  Unlike Wilton and Brillhart, the jurisdiction of the federal court here was based upon a federal question, not diversity of citizenship. (A. 13)  The District Court abused

17

its discretion and offered no reason as to why the state court is better suited than the federal court to resolve the federal questions at issue particularly when the federal questions are important and novel.

The federal constitutional question presented here has never been adjudicated by the Second Circuit. In fact, the New York State Attorney General's Office was given notice of the constitutional question presented here but "determined that it will not intervene" in response to Kanciper's constitutional challenge to CPL 2.10(7). (A. 262-263, 9-10)

Only Judge Broderick in Suss v. ASPCA, 855 F.Supp. 66, 67 (S.D.N.Y. 1994) addressed a similar issue. In Suss, Judge Broderick held that permitting the ASPCA, a private animal rights advocacy group like the SCSPCA, to conduct a warrantless entry without consent is unconstitutional because it violated the Fourth Amendment and because it involved impermissible delegation of sovereign governmental power to non-neutral private parties. See also, Gen. Elec. Co. v. N.Y. State Dept. of Labor, 936 F.2d 1148 (2d Cir. 1991)(the federal Due Process Clause limits the manner and extent to which a state legislature may delegate legislative authority to a private party); Suss v. ASPCA, 823 F.Supp. 181, 188-89 (S.D.N.Y. 1993)("the ASPCA cannot

18

be recognized as a neutral body, because it represents specific views and is not administered by persons chosen directly or indirectly by elected official" … "for an interested party to make decisions utilizing governmental authority is anathema to due process" … "decision making [by private entities] involving coercive exercise of sovereign power" is inherently suspect).

Referring to the law enforcement function of SPCA organizations and quoting from a State of New Jersey Commission of Investigation, a scholarly article concluded that "it is an anomaly that the state continues to empower organizations of private citizens to carry weapons, investigate criminal and civil conduct, enforce laws, issue summonses, effect arrests and obtain and execute search warrants.  The issue is no longer whether or how to fix this errant group of self-appointed, self directed and uncontrolled entities, but whether to eliminate the archaic system entirely."  See, "Enforcing Animal Welfare Statutes: In Many States, It's Still the Wild West", Elizabeth Rumley and Rusty Rumley (San Joaquin Agricultural Law Review, Spring 2012).

Here, we are asking the District Court to make a similar determination because the SCSPCA conceded in an affidavit that no governmental entity oversees or controls it.  (A. 214)  As

19

set forth in Youell, referring this type of constitutional issue to the state court is an abuse of discretion.  The Wilton and Brillhart cases are not dispositive here because the outcome in the pending state court action has little to do with the outcome in the federal action.  For example, Kanciper could lose her common law claims in state court but CPL §2.10(7) could still be declared unconstitutional in federal court and vice versa.  In other words, the ultimate determination on the state court claims has no bearing on the ultimate determination on the federal constitutional claims.  See, Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998)("… the district court's concern for piecemeal litigation is misguided as resolution of the federal constitutional claims will determine the case before us, regardless of the outcome of the state case.)

Since its decision in Youell, the Second Circuit has remained steadfast that it is inappropriate for a District Court to dismiss a case under Brillhart/Wilton when the federal court action involves issues of federal law and does not involve claims that are pending in a state court.  See e.g., Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998)(dismissal based on Wilton is an abuse of discretion because "the present

action involves issues of federal law only"). More recently, in Niagara Mohawk Power Corporation v. Hudson River-Black River Regulating District, 673 F.3d 84 (2d Cir. 2012), the Second Circuit held that "[d]espite the considerable deference we grant district courts under the Wilton abstention standard, we conclude that the district court abused its discretion by dismissing National Grid's remaining constitutional claims." Niagara Mohawk at 104.

In Niagara Mohawk, National Grid challenged the constitutionality and statutory authority of a New York public benefit corporation. In particular, National Grid argued that federal law preempted state statutes and that the state statutes violated the United States Constitution and the New York Constitution. The District Court granted summary judgment in favor of the defendants on National Grid's preemption claims but abstained from exercising jurisdiction and dismissed the remaining constitutional claims on the "theory that they should more properly be addressed in National Grid's previously filed, pending state-court actions." Id. at 87.

In reversing, the Second Circuit explained that Wilton left open the question of whether the rule even applies in "cases raising issues of federal law". Id. at 104. The Second Circuit

21

held that the federal action, by contrast, "involved federal as
well as state claims, with the former predominating over the
latter." Id. at 105.  "Although the Wilton test grants district
courts broad discretion, that discretion is not unfettered. Our
Court and other circuit courts have developed a set of factors
"to guide the exercise of discretion in Declaratory Judgment Act
cases." Id. citing Dow Jones & Co. vs. Harrods Ltd., 346 F.3d
357, 359 (2d Cir. 2003).

"Our test 'asks (1) whether the judgment will serve a
useful purpose in clarifying or settling the legal issues
involved' and '(2) whether a judgment would finalize the
controversy and offer relief from uncertainty.'  Other circuits
have added additional factors: (3) 'whether the proposed remedy
is being used merely for 'procedural fencing' or a 'race to res
judicata,'(4) 'whether the use of a declaratory judgment would
increase friction between sovereign legal systems or improperly
encroach on the domain of a state or foreign court,' and (5)
'whether there is a better or more effective remedy.'" Dow
Jones at 359-60.

Here, like in Niagara Mohawk, "there is no indication that
the district court applied these factors before deciding to

22

abstain." Niagara Mohawk at 105. Had it done so, we

respectfully submit that abstention was not justified under

either Wilton or Brillhart. A judgment by the District Court

here would serve a useful purpose, to settle the federal

constitutional issues involved, finalize the controversy, and

offer Kanciper (as well as those similarly situated to her such

as Lee Ann Rush (A. 278-281), Claudette LaCast (A. 270-274), and

Marie Guerrera Tooker (A. 275-277)) relief from uncertainty.

There is no evidence that Kanciper turned to the federal courts

for any improper purpose or that a declaratory judgment would

"increase friction" between the federal courts and New York

state courts, or that there is "a better or more effective

remedy" than a decision by the federal district court on this

issue.

     The within action, like Niagara Mohawk, "is not the type of

case for which Wilton abstention was designed: 'where another

suit is pending in a state court presenting the same issues, *not

governed by federal law,* between the same parties,' and 'the

questions in controversy ... can better be settled in the

proceeding pending in the state court.'" Niagara Mohawk at 105.

"Indeed, cases like this one that involve questions of federal

23

law are 'fundamentally distinct from <u>Wilton</u> because federal law
supplies a rule of decision,' whereas <u>Wilton</u> 'involved state law
only.'" <u>Id.</u> citing <u>Youell</u> at 376.

Accordingly, as in <u>Niagara Mohawk</u>, we respectfully request
that this action be remanded to the District Court for
resolution because it involves an important and novel question
of federal law.

## I. (b) The District Court, Under *Brillhart,* Should Have Stayed, Rather than Dismissed, Kanciper's Claims under the Constitution of the United States

Assuming that the District Court properly applied <u>Brillhart</u>
and <u>Wilton</u> (which we dispute in Section I(a) above), it abused
its discretion in dismissing the case because the preferable
course is to stay the federal action pending resolution of the
state court proceeding.

The Supreme Court in <u>Wilton</u> (at footnote 2 therein) stated
that "[w]e note that where the basis for declining to proceed is
the pendency of a state proceeding, a stay will often be the
preferable course, because it assures that the federal action
can proceed without risk of a time bar if the state case, for
any reason, fails to resolve the matter in controversy." The

24

Second Circuit expanded on <u>Wilton</u> in <u>Niagara Mohawk</u> explaining that <u>Wilton</u> "did not sanction dismissal of a declaratory judgment action on abstention grounds", instead a stay will often be the preferable course. <u>Niagara Mohawk</u> at 104-05.

Since a declaratory judgment is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim based on such rights would also be time-barred. <u>Stone v. Williams</u>, 970 F.2d 1043, 1048 (2d Cir. 1992).

Here, Kanciper seeks to vindicate the violation of her civil rights pursuant to 42 U.S.C. 1983. The statute of limitations is three years. The civil rights violations occurred from, on or about, August 2009 through May 2010. Accordingly, Kanciper timely filed her claim with the District Court on April 30, 2012.

The District Court's outright dismissal (in lieu of a stay) of the declaratory judgment action left Kanciper in a precarious procedural posture which is exactly what <u>Wilton</u> and <u>Niagara Mohawk</u> were trying to avoid. Although CPLR §205(a) gives Kanciper six months to re-file her federal claims in state court, there is a risk that the statute of limitations will bar a federal court from hearing these issues in the future if the state court fails to resolve them for any reason.

25

The District Court did not give a reason or otherwise analyze why it dismissed Kanciper's federal claims rather than issue a stay. Accordingly, we respectfully request that if this Court does not remand the case to the District Court for disposition, then, in the alternative, it remand the case to the District Court with instructions to stay the case pending resolution of the state tort action.

**II.     The District Court Should Have Applied the *Colorado River* Doctrine instead of the Claim Splitting Doctrine in Connection with Plaintiff's Civil Rights Claim**

It is well-settled that when parallel state and federal litigations arise, a District Court should apply the Colorado River doctrine set forth in Colorado River Water Conservation Dist. V. United States, 424 U.S. 800 (1976) to determine whether one or both actions should proceed. The Colorado River doctrine is a stringent standard because as a matter of law and policy, the federal courts should remain open to litigants asserting federal claims. Notwithstanding this doctrine, its application here and the underlying rationale for it, the District Court failed to address or apply it. (SPA. 25-39) Instead, the District Court erroneously dismissed Kanciper's §1983 claim by applying a claim splitting doctrine adopted by the Tenth

26

Circuit, conceding that this Circuit has never sanctioned such a rule. (SPA. 30)  As set forth more fully below, it is respectfully submitted that had the District Court properly applied the Colorado River doctrine which is required under these procedural circumstances, it would have retained jurisdiction over Kanciper's §1983 claim.

The Colorado River abstention doctrine should be employed when cases run parallel to each other.  "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Niagara Mohawk Power Corporation v. Hudson River-Black River Regulating District, 673 F.3d 84, 101 (2d Cir. 2012).  The claim splitting doctrine, on the other hand, is applied when one lawsuit has reached conclusion and another lawsuit arising out of the same facts is filed thereafter.  AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 73 (2d Cir. 2003).

The District Court, in a previous case entitled Steinberg v. Nationwide Mutual Ins. Co., 418 F.Supp.2d 215, 223 (E.D.N.Y. 2006), recognized this distinction.  In Steinberg, the plaintiff commenced a class action in federal court in 2005 against Nationwide alleging breach of contract.  Id. at 216.

27

However, six years beforehand in 1999, the "plaintiff commenced a class action against Nationwide nearly identical to the [federal action]" in the Supreme Court of the State of New York, Suffolk County. The state action was removed to federal court and, ultimately, remanded back to state court ("Steinberg I"). Id. at 217-18.

While Steinberg I was pending in state court, the plaintiff in 2005 filed an identical class action in federal court ("Steinberg II") under the then-newly enacted Class Action Fairness Act which was "parallel to the pending state court action in form and substance, in that it is based on the same transactions and occurrences; alleges identical claims; and seeks identical relief." Id. at 218. Nationwide then filed a motion to dismiss Steinberg II "under the theory of claim splitting". Id.

In reviewing the claim splitting doctrine, the District Court here held that:

> claim splitting does not apply to parallel state and federal action. Courts have consistently declared that 'where there is concurrent jurisdiction, however, it is permissible for a plaintiff to file parallel state and federal actions simultaneously.' Rather, the claim splitting doctrine applies to an attempt to 'maintain two actions on the same subject *in the same court*, against the same defendant at the same time.' Accordingly, the proper question in a case involving parallel state and federal

28

actions is whether abstention under <u>Colorado River</u> is appropriate. <u>Id.</u> at 223 (citations omitted)(emphasis added).

The District Court then conducted an analysis under the six <u>Colorado River</u> factors and ultimately concluded that it should retain jurisdiction. <u>Id.</u> at 225. Here, however, the same District Court failed to apply <u>Colorado River</u>. Instead, acknowledging that the Second Circuit has not embraced the notion, the District Court adopted a different theory of res judicata applied by the Tenth Circuit.

Relying most heavily on <u>Katz v. Gerardi</u>, 655 F.3d 1212, 1217-18 (10th Cir. 2011)[4] and applying its holding, the District Court determined that the appropriate inquiry in a claim splitting analysis is "*assuming that the first suit were already final*, the second suit could be precluded pursuant to claim preclusion." (emphasis in original). (SPA. 29) Besides not being the law in this Circuit[5], the procedural circumstances in <u>Katz</u> were materially different than the case at bar. In <u>Katz</u>, the plaintiff "filed two cases in the same [federal] district

---

[4] The District Court also relied on <u>Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.</u>, 296 F.3d 982, 982 n.1 (10th Cir. 2002)(applying Colorado law). (SPA. 29) However, the <u>Hartsel</u> court reversed the district court's decision dismissing plaintiff's case on claim splitting grounds.

29

court, involving the same subject matter, seeking the same claims for relief against the same defendants."  Id. at 1219.  That is not the case here.

Other cases cited by the District Court do not support its holding either.  For instance, the District Court string cited to Am. Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87 (S.D.N.Y. 1992) and Bull & Bear Group, Inc. v. Fuller, 786 F.Supp. 388 (S.D.N.Y. 1992). (SPA. 30)  In Mopex, the trial court held that preclusion applies only when the legal theories were "*actually litigated*".  In Fuller, the trial court held that claim splitting did not apply and remanded the case based on the Colorado River doctrine.  The District Court also cited to Migra v. Warren City School District Board of Education, 465 U.S. 75 (1984) and Dyno v. Village of Johnson City, 240 Fed.Appx. 432 (2007).  (SPA. 33)  However, in both of these cases, the plaintiffs' federal cases were only first commenced *after* *judgment* was entered in their prior state court cases.

The District Court also relied upon AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 73 (2d Cir. 2003)(applying Delaware law), for the proposition that a

---

[5] We are unable to find any Second Circuit case that has applied this legal standard.

30

plaintiff must present all of her claims in one action. However, AmBase is inapplicable here because in AmBase, the previous state court action was fully adjudicated so res judicata was implicated. Also, the federal court in AmBase was sitting in diversity adjudicating state law claims. Here, there is no final judgment in the parallel state court proceeding and the District Court is being asked to determine federal questions.

The Second Circuit reiterated the claim splitting doctrine in Savoy of Newburg, Inc. v. City of Newburgh, 242 Fed.Appx. 716, 718 (2d Cir. 2007) citing Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997), and held that "[u]nder New York law, claim preclusion bars future litigation between the same parties on claims that arise from the same transaction or series of transactions *previously litigated to a conclusion*, even if the new litigation is 'based upon different theories or if seeking a different remedy'". Again, that is not the case here where two parallel proceedings are underway. In such a situation, the Colorado River doctrine applies. See, Niagara Mohawk Power Corporation v. Hudson River-Black River Regulating District, 673 F.3d 84, 101 (2d Cir. 2012).

The Colorado River doctrine sets a high bar, with stringent requirements. "[O]nly the clearest of justifications will warrant dismissal" under Colorado River. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 14–15 (1983). The doctrine bears in mind the repeatedly emphasized "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them". Village of Westfield v. Welch's, 170 F.3d 116, 120 (2d Cir.1999). In fact, "[s]uch differences in parties and issues are strong factors against invoking exceptional circumstances as the basis for dismissal." Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir.1988).

The Second Circuit has enumerated six factors to be weighed to decide whether a district court should exercise its discretion to abstain under Colorado River: (1) the assumption of jurisdiction by either court over any res; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and(6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. Welch's at 121.

32

No one factor is necessarily determinative. Moses Cone at 15-16. But "the balance [is] heavily weighted in favor of the exercise of jurisdiction" (Id. at 16) and therefore, "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." Woodford v. Comty. Action Agency, 239 F.3d 517, 522 (2d Cir. 2001). See, Welch's at 120 (emphasizing that because abstention represents a narrowly circumscribed exception to "a court's normal duty to adjudicate a controversy properly before it, ... discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved," and "there is little or no discretion to abstain in a case which does not meet traditional abstention requirements") (internal quotation marks omitted).

Applying these factors to Kanciper's circumstances leads to the conclusion that abstention under Colorado River is inappropriate. First, this case implicates no res. Second, the federal forum does not inconvenience any party. Third, any concern about the prospect of piecemeal litigation weighs in favor of retaining jurisdiction because Kanciper's state action involves claims by multiple plaintiffs against multiple defendants (many of whom are not parties to this federal action) and only raises state common-law tort claims. Fourth, while the

33

state common law tort action was filed first, it is not close to resolution, and even if it was, its resolution would not materially advance the disposition of this federal action. Fifth, Kanciper's federal claims predominate her allegations against the SCSPCA-related defendants.  See, Woodford at 523 (even where there are some state-law issues, "the presence of federal law issues must always be a major consideration against surrender."... And "[i]f there is any substantial doubt" as to whether "complete and prompt" protection of the federal right is available in the sate proceeding, dismissal "would be a serious abuse of discretion.")  Sixth, for the same reasons, the state court action is not in as good as a position to adequately protect Kanciper's federally protected rights which the District Court is better suited to address.

For the most part, the state tort case and this federal action involve different plaintiffs and defendants (for example, Lauber and Dunn are not defendants in the state action; while Studer, Giorgetti, Holder and Fergo are not defendants in the federal action; in addition, New York Horse Rescue Corp. and M. Butler Farm, LLC are plaintiffs in the state tort action but are not plaintiffs here).

There is no risk of inconsistent verdicts because Kanciper

34

can win her civil rights claim against the SCSPCA-related defendants in federal court but lose her common-law tort claims against them (and the other non-SCSPCA related defendants) in state court (and vice versa).  The elements of the federal/constitutional claims *vis a vis* the state common-law tort claims are so distinct that one does not affect the other as a matter of law.  See, Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998).

We respectfully submit that the District Court erred in not conducting a Colorado River analysis to Kanciper's civil rights claim.  Had it done so, the analysis would have tipped in Kanciper's favor.  Accordingly, we respectfully request that Kanciper's civil rights claim be reinstated in federal court.

35

## CONCLUSION

For the reasons set forth above, we respectfully request that: (a) this action be remanded to the District Court for resolution because it involves important and novel questions of federal law; or, in the alternative, that this action be stayed pending resolution of the state court tort action, and (b) Kanciper's civil rights claim be reinstated in federal court.

Dated:     New York, New York
           April 25, 2012


                         McLAUGHLIN & STERN, LLP


                         By: /S/ Alan E. Sash
                         Steven J. Hyman
                         Alan E. Sash
                         260 Madison Avenue
                         New York, NY 10016
                         (212) 448-1100
                         *Attorneys for Appellant*

36

## **CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,080 words and 812 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a monospaced typeface using Microsoft Word in Courier New, 12 point font.

SPECIAL APPENDIX

## **Table of Contents**

**Page**

Memorandum of Decision and Order of the Honorable
Arthur D. Spatt, dated February 23, 2013, Appealed From ...........   SPA1

Judgment of the United States District Court, Eastern District
of New York, entered March 1, 2013, Appealed From ................   SPA41

Notice of Appeal, dated March 18, 2013 ...........................................   SPA42

**SPA1**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MONA T. KANCIPER,

                Plaintiff,

       -against-

SUFFOLK COUNTY SOCIETY FOR THE
PREVENTION OF CRUELTY TO ANIMALS,
INC., ROY GROSS, GERALD LAUBER,
SHAWN A. DUNN, MICHAEL NORKELUN,
JOHN AND JANE DOES 1-10,

                Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
12-CV-2104 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**McLaughlin & Stern**
*Attorneys for the Plaintiff*
260 Madison Avenue
New York, NY 10016
      By: Alan Edward Sash, Esq.,
         Steven Jay Hyman, Esq., Of Counsel

**Gordon & Rees, LLP**
*Attorneys for the Defendants*
90 Broad Street, 23rd Floor
New York, NY 10004
      By:  Brian Maurice Oubre, Esq.,
         Joseph Salvo, Esq.,
         Mercedes Colwin, Esq., Of Counsel

**SPATT, District Judge**.

      The Plaintiff Mona T. Kanciper (the "Plaintiff" or "Kanciper") commenced this civil

rights action on April 30, 2012, pursuant to 42 U.S.C. § 1983, *et seq.* ("Section 1983"), as well as

Article IV, Section 1 of the New York State Constitution and Section 30 of the New York State

Executive Law, stemming from the execution of a search warrant on her property by the agents

of the Defendant, the Suffolk County Society for the Prevention of Cruelty to Animals Inc.

**SPA2**

("SPCA"), and her subsequent arrest and prosecution.  Further, the Plaintiff seeks a declaratory judgment that New York State Criminal Procedure Law §2.10(7)—a statute pertaining to the peace officer status of the SPCA's agents—is unconstitutional both on its face and as applied. Presently pending before the Court is the Defendants' motion to dismiss and the Plaintiff's motion to amend her complaint.  For the reasons set forth below, the Court grants the Defendants' motion to dismiss this action and thus need not address the Plaintiff's motion to amend.

## I.  BACKGROUND

The following facts are drawn from the complaint and construed in a light most favorable to the Plaintiff.  As another district judge aptly phrased it, "[t]his case, brought under the Fourth Amendment, involves the need to reconcile human rights with the obligation to protect other species from harm caused by human activity."  <u>Suss v. Am. Soc. For Prevention of Cruelty to Animals</u>, 823 F. Supp. 181, 184 (S.D.N.Y. 1993).

The Defendant the Suffolk County Society for the Prevention of Cruelty to Animals, Inc. ("SPCA") is a not-for-profit corporation organized and existing under the laws of the State of New York.  The SPCA is governed by a six person Board of Directors: the Defendant Roy Gross (the Executive Director and Chief), his wife Lois Gross, Alex Parathyrus, Herbert Kellner, the Defendant Gerald Lauber (Chief of Detectives), and William Wexler.  The Plaintiff alleges that the SPCA has approximately 30 individuals who have been given Peace Officer status and are part-time agents.  The Defendants Michael Norkelun and Shawn A. Dunn are "detectives" with the SPCA and in doing so, investigate, prosecute, and enforce alleged violations of the New York State Penal Law and the Agriculture and Markets Law.

2

**SPA3**

The SPCA was formed in or about 1983 pursuant to the New York State Not-For-Profit Corporation Law, § 1403, which authorizes one corporation per county whose purpose is the prevention of cruelty to animals.  See N.Y. NPC Law § 1403(a)(1) ("A corporation for the prevention of cruelty to animals shall not hereafter be incorporated for the purpose of conducting its operations . . . in any other county if thereby two or more such corporations would exist in such county . . .").  It has no oversight by any governmental body or official.  Nevertheless, the SPCA is empowered under Criminal Procedure Law § 2.10(7) to grant its employees or agents "peace officer status", which in turn, empowers these individuals to search and arrest, carry a weapon, and act to enforce the laws of the State of New York in the same manner as governmental employees.

The Defendants Lauber, Dunn and Norkelun are such peace officers.  In order to qualify as a peace officer, an individual must complete a short training course sponsored by the New York State Division of Criminal Justice.  However, appointed peace officers take no oath of office; they do not report to any public official; and they are not under the auspices or control of any public agency.  They are accountable only to the Board of Directors of the SPCA.  The peace officers are assigned to one division of the SPCA—the "Law Enforcement Division"—as opposed to the "Humane Division", which focuses on pet clinics and programs.

Prior to August 2009, SPCA issued badges to its peace officers.  According to the Plaintiff, these badges bear a virtual copy of the New York State Device of Arms and are embossed with the public officer title of "Detective", in violation of New York General Business Law § 136.  The SPCA also issues its peace officers shield numbers, patches, epaulettes, and uniforms.  In addition, they issue public officer titles to allegedly give the appearance of police officer status, such as "Officer", "Detective", "Chief", "Sergeant", and "Lieutenant".

**SPA4**

Kanciper owns and resides on a 50-acre horse farm in Manorville, New York, which is located in Suffolk County.  This horse farm is the location of a corporation called The New York Horse Rescue Corporation, which rescues discarded and unwanted horses.  According to the Plaintiff, since 1998, her horse farm has rescued more than 1,500 horses, many of whom were bound for auction kill buyers.  These horses were then either adopted by families or lived the remainder of their lives on the horse farm, sometimes being used to provide horseback riding lessons.  Kanicper's husband, who is now deceased, was the farm's resident veterinarian.  The Plaintiff's two children also live on the property.

On or about August 5, 2009, a woman called SPCA to make a complaint regarding "equine abuse" at the horse farm.  The Plaintiff claims that this complaint was outrageous and untrue, and was made only because the complainant had a personal vendetta against her.  Regardless, the SPCA assigned a case number to the complaint and referred it to Defendant Dunn for investigation.  According to the Complaint, Dunn went to the Plaintiff's horse farm unannounced on August 18, 2009 at approximately 1:30pm.  He knocked on the front door.  The Plaintiff's husband answered, and Dunn announced that he was a "detective" and there to investigate a complaint about horse abuse.  Kanciper's husband, who was frail and mentally impaired due to past injuries, told Dunn to come back when Kanciper was home.  However, the Complaint states that Dunn nevertheless intimidated and threatened him, saying that he would lose his veterinary license if he did not cooperate.  After repeatedly telling Dunn to leave because he was ill, Dunn eventually left the residence.

On August 28, 2009, Dunn once again visited the Plaintiff's horse farm.  On this date, Kanciper and her children were outside the residence.  Dunn allegedly approached Kanciper and her children, revealing that he was wearing a firearm and displaying an SPCA "badge" on a

# SPA5

chain around his neck.  He introduced himself as "detective".  The Plaintiff claims that she told Dunn to leave the premises and that if he had any questions, he should contact her lawyer, to which Dunn responded, "if you have an attorney, you must be guilty."  (Compl., ¶ 56.) Eventually, Dunn left the premises and threatened "We'll see about this."  He also called the Kanciper home on November 16, 2009.  Dunn eventually closed the case file against Kanciper in December 2009, finding no probable cause that Kanciper or her husband was abusing horses or any other animal.

On December 23, 2009, another woman with a supposed personal vendetta against the Plaintiff called SPCA to allege that Kanciper was abusing horses.  Once again, SPCA assigned a case number to the complaint, this time assigning the case to Defendant Norkelun.  On Christmas Day, December 25, 2009, Norkelun made an unannounced visit to the horse farm to question Kanciper at approximately 12:50pm.  He drove a vehicle with SPCA markings all over it, which the Plaintiff alleges had the appearance of a police car.  He called the Plaintiff's house phone from his car and informed her that he was a "detective" waiting to speak with her about a starving horse.  The Plaintiff states that she informed Norkelun that there was no starving horse, but Norkelun nevertheless requested permission to walk around the residence.  Due to his persistence, Kanciper proceeded to walk Norkelun around the property, despite the fact that it was Christmas Day and her husband had recently passed away.  At the conclusion of this tour, Norkelun told the Plaintiff that while he could not tell her who was making the complaints, he was familiar with the farm and knew that all the horses were fine.  In his official report, he wrote that Kanciper "did show this officer several horses inside a large barn that appeared healthy." (Compl., ¶ 81.)

SPA6

Nonetheless, four days later, on December 28, 2009, Norkelun visited the home of the complainant to collect written statements.  However, as to the Plaintiff, he did not interview any of the employees or tenants of her house farm, nor did he make firsthand observations.  Instead, Norkelun concluded based upon the complainant's statements, that Kanciper had euthanized dogs and horses by herself without a veterinarian present.  The Plaintiff alleges that these sources should not have been utilized, because the complainants' statements were riddled with hearsay and driven by a motivation to fabricate.

Between January 2010 and March 2010, the SPCA, including Gross, Lauber, Norkelun and Dunn, apparently made no efforts to corroborate, verify, or otherwise obtain firsthand accounts of the allegations made against Kanciper.  Instead, they considered only the complainants' statements and prepared an application for a search warrant.  Accordingly, on March 18, 2010, Norkelun applied for a search warrant pursuant to N.Y. CPLR § 690 from a local district court on behalf of the SPCA.  He submitted an affidavit in support of the application, which stated that he was a detective and that the source of the relevant information was his personal knowledge.  He did not include information indicating that Kanciper showed him several horses that appeared healthy.  In addition, Norkleun apparently also included allegations that Kanciper had endangered the welfare of a child.  The Plaintiff alleges that the request for a search warrant was in violation of Criminal Procedure Law § 690 because as a "peace officer", Norkelun was not authorized to request a search warrant, and that because the search warrant was based upon allegations of the Penal Law (endangering the welfare of a child), it was for matters outside of his role for prevention of cruelty to animals.

On March 20, 2010, Norkulen, Lauber and eight other members of the SPCA arrived unannounced at the horse farm to execute the search warrant.  At 9:25am, four employees from

**SPA7**

the Suffolk County Department of Public Works, with heavy digging machinery, also arrived at the horse farm.  The machinery was used to dig up large portions of Kanciper's property without her consent.  In addition, agents of the SPCA restrained Kanciper's movement without her consent and did not let her leave the horse farm while the search warrant was being executed, despite the absence of an arrest warrant.  They also are alleged to have ruthlessly interrogated her during the search, despite her request to speak with counsel.  Kanciper was not read her <u>Miranda</u> rights by the SPCA agents until 4:00pm, which was approximately eight hours after the search began.

The SPCA searched the horse farm for a total of ten hours.  They also alerted a news crew from News 12 television about the search warrant so that a news van, cameraman, and reporter were present at the horse farm during the search.

During the execution of the first search, Norkelun requested a second warrant to search the Plaintiff's home.  Once it was obtained, he returned to her premises, entered her home, and allegedly seized her personal property.

In July 2010, a grand jury indicted the Plaintiff on three counts of animal cruelty solely with regard to dogs, not horses, and two counts of endangerment of a minor.  The Plaintiff subsequently surrendered to the 7th Precinct where Norkelun was waiting for her.  He handcuffed her to a desk for several hours while processing her.  However, the 7th Precinct and the Suffolk County Police Department were not involved with the investigation or arrest of the Plaintiff.  Eventually Kanciper went to trial on the five counts against her.  Ultimately, on October 13, 2011, the court dismissed one charge and found Kanciper not guilty on all of the other charges except one, endangerment of a child.  This count was based upon allegations that Kanciper, in front of a 10-year-old, injected a dog who was dangerous and aggressive with a

7

**SPA8**

tranquilizer.  As the Plaintiff points out in the Complaint, there were no counts sustained against her related to animal cruelty, which are the only laws that SPCA is permitted to enforce.  The endangerment of a child charge was being appealed at the time that the Complaint was filed. However, on November 14, 2012, a unanimous panel of the New York Appellate Division, Second Judicial Department, reversed that conviction, holding that the evidence failed to establish that witnessing the injection of the tranquilizer was likely to result in harm to the physical, mental, or moral welfare of the child.  See New York v. Mona Kanciper, 2012 N.Y. Slip Op. 07695 (App. Div. 2012).  Accordingly, the Plaintiff has been exonerated on all charges brought against her by the Defendants.

Meanwhile, on February 4, 2011, while the criminal case was still pending, Kanciper brought suit in New York State Supreme Court, County of Suffolk, against the SPCA and other individuals, titled New York Horse Rescue Corporation, M. Butler Farm, LLC and Mona T. Kanciper v. Suffolk County Society for the Prevention of Cruelty to Animals, Roy Gross, Michael Norkelun, Ann Marie Fergo, Emily Holder, and Ann Collins Studer, Index No. 4263/2011 (the "Suffolk County Action").  In this action, which appears to still be pending, the Plaintiff seeks civil damages from SPCA with regard to their alleged abuse of process; negligent investigation of witness complaints and in the obtaining and execution of search warrants; tortious interference with prospective business relations; fraud and misrepresentation; negligent misrepresentation; and intentional infliction of emotional distress.  (See Oubre Decl., Ex. E.)

Further, on February 1, 2012, the Plaintiff also initiated a currently pending Article 78 Petition in New York State Supreme Court, Suffolk County, Index No. 3473/2012, to declare the SPCA a "public entity" pursuant to New York State law, and therefore subject to the Freedom of Information Law ("FOIL").  (See Oubre Decl., Ex. F.)

8

**SPA9**

Kanciper then initiated the present lawsuit on April 30, 2012.  In this case, the Plaintiff brought several causes of action against the Defendants.  First, she brought a cause of action for a declaratory judgment and a permanent injunction, asserting that N.Y. Criminal Procedure Law §2.10(7) is unconstitutional, because it unlawfully delegates to a private advocacy group police powers to investigate, search, seize, and arrest individual citizens of the United States in derogation of the Fourth and Fifth Amendments.  Second, she brought a cause of action for violations of 42 U.S.C. § 1983, alleging that the Defendants acting under color of state law subjected Kanciper to a deprivation of her constitutional rights by exceeding their authority; conducting an illegal search of her home and property; unlawfully restraining her; improperly applying for an executing a search warrant; unlawfully interrogating her; and depriving her of the right to counsel.  Third, she brought a cause of action for violations of the New York State Constitution, Article IV, Section I, and New York State Executive Law §30.

The Plaintiff asserts that the legal issues in the Suffolk County Action have nothing to do with civil rights or the constitutionality of Criminal Procedure Law § 2.10(7)—which is the gravamen of Kanciper's complaint against the SPCA Defendants in this lawsuit.  She also contends that the sole legal issue in the Article 78 proceeding—whether SPCA is subject to FOIL—is wholly independent from the question of whether the Defendants violated Kanciper's civil rights or whether Criminal Procedure Law § 2.10(7) is unconstitutional.

**SPA10**

## II.  DISCUSSION

### A.  Legal Standards

#### 1. Motion Pursuant to Fed. R. Civ. P. 12(c)

In general, "the standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 570 (2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at 72 (quoting Iqbal, 129 S. Ct. at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor.  Zinermon v.

# SPA11

Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists

Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).  Only if this Court is satisfied that "the complaint

cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal

pursuant to Rule 12(b)(6)".  Hertz Corp. v. City of N.Y., 1 F.3d 121, 125 (2d Cir. 1993).  The

issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191,

198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d

90 (1974)).

## 2. Motion to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its

pleading by leave of court and leave to amend "shall be freely given when justice so requires."

Fed. R. Civ. P. 15(a); see also Monahan v. N.Y. City Dep't. of Corr., 214 F.3d 275, 283 (2d Cir.

2000) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

Generally, amendments are favored because they "tend to facilitate a proper decision on the

merits."  Sokolski v. Trans Union Corp., 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal

quotation marks and citations omitted).

Where, as here, a proposed amendment adds new parties, the propriety of amendment is

governed by Fed. R. Civ. P. 21, which provides that "[o]n motion or on its own, the court may at

any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21; see Garcia v. Pancho Villa's of

Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010) (citing Duling v. Gristede's

Operating Corp., 265 F.R.D. 91 (S.D.N.Y. 2010)); see also City of Syracuse v. Onondaga Cty.,

464 F.3d 297, 308 (2d Cir. 2006) ("Although Rule 21 'contains no restrictions on when motions

to add or drop parties must be made, the timing of the motion may influence the court's

discretion in determining to grant it.  Thus, the court typically will deny a request that comes so late in the litigation that it will delay the case or prejudice any of the parties to the action.") (quoting 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, Civil 3d § 1688.1 at 510 (West 2001)).  Rule 21 grants the court broad discretion to permit the addition of a party at any stage in the litigation.  Sullivan v. West New York Res., Inc., No. 01 Civ. 7847, 2003 WL 21056888, at * 1 (E.D.N.Y. Mar. 5, 2003).

In deciding whether to permit the addition of defendants, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15."  Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (quoting Fair Hous. Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y.1972)).  Thus, leave to amend a complaint to assert claims against additional defendants "should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court."  DeFazio v. Wallis, No. 05 Civ. 5712, 2006 WL 4005577, at * 1 (E.D.N.Y. Dec. 9, 2006) (citing Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603–04 (2d Cir. 2005); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)).

**B.  As to the Defendants' Motion to Dismiss Based on Abstention**

The Defendants raise several arguments as to why this Court should dismiss this action in light of the parallel state court proceedings.  Many of these arguments relate to various abstention doctrines that have been developed over time by the federal courts.  The Defendants have also raised the issue of "claim splitting", which is not an abstention doctrine but rather more accurately categorized as a variation of the *res judicata* doctrine.  The Court will first explore the various potential grounds for abstention and then will address the Defendants' claim splitting argument in a separate section below.

# SPA13

The Supreme Court has acknowledged four extraordinary and narrow exceptions to the duty to exercise jurisdiction.  First, a federal court may abstain to avoid deciding a constitutional issue which may be disposed of by a state court ruling on state law.  See Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941).  Second, abstention is appropriate in cases involving complex questions of state law which implicate important state policy issues.  See Burford v. Sun Oil Co., 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943).  Third, a federal court must abstain in cases filed to enjoin state enforcement proceedings absent a showing of bad faith, harassment, or other unusual circumstance calling for equitable relief.  See Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).  Fourth, abstention is permissible "for reasons of wise judicial administration" when parallel state court proceedings are pending.  See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976); Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995).  "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases.  Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes."  Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 11 n. 9, 107 S. Ct. 1519, 1527 n.9, 95 L. Ed. 2d 1 (1987).

Putting aside the notion of claim splitting, which the Court will address below, the Defendants claim that the Court should abstain from the instant action on three of the four above mentioned grounds.  The Court will first discuss Burford abstention, and then go on to assess the alternative two potential bases for abstention.

13

# SPA14

### 1. Burford Abstention

First, the Defendants assert that the Court has ample ground to abstain from adjudicating the instant action because the parallel Suffolk County Action and pending Article 78 Petition can provide the same relief to the Plaintiff, and because the state-law based claims are better adjudicated by the state court.  Specifically, the Defendants have moved this Court to abstain pursuant to a principle enunciated by the Supreme Court known as the "Burford abstention." This doctrine instructs a federal court to abstain, as follows:

> [w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI"), 491 U.S. 350, 361, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) (citations and quotations omitted); see Tribune Co. v. Abiola, 66 F.3d 12 (2d Cir. 1995).

The Burford abstention doctrine is applied by federal courts in order to avoid unnecessary conflict with a state's administration of its own affairs.  See Weiser v. Koch, 632 F. Supp. 1369, 1384 (S.D.N.Y. 1986).  As opposed to another type of abstention— Colorado River abstention (see Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976))—the purpose of which is to ease the congestion of the federal court docket when a similar action is pending in state court, the goal of Burford abstention is to avoid needless disruption of state efforts to establish a coherent policy in an area of comprehensive state regulation.

**SPA15**

There are "three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public." Libery Mut. Ins. Co. v. Hurlbut, 585 F.3d 639, 650 (2d Cir. 2009). Those factors are as follows: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." Hachamovitch v. DeBuono, 159 F.3d 687, 697 (2d Cir. 1998). When determining whether Burford abstention or dismissal is appropriate, a federal court must make an "equitable decision balanc[ing] the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem, and retaining local control over difficult questions of state law bearing on policy problems of substantial public import." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996) (citations and internal quotation marks omitted). "This balance only rarely favors abstention, and the power to dismiss recognized in Burford represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" Id. (quoting Colo. River, 424 U.S. at 813, 96 S. Ct. 1236).

A court has three options when it decides to refrain from the action under the Burford abstention doctrine. The court may dismiss the action, remand the action to state court if it was commenced there, or stay the action. See id. at 721, 116 S. Ct. 1712, 135 L. Ed. 2d 1. The Supreme Court has held that "an order merely staying the action 'does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only

15

postponement of decision for its best fruition.'" Id. (quoting Louisiana Power & Light Co. v..
City of Thibodaux, 360 U.S. 25, 29, 79 S. Ct. 1070, 3 L. Ed. 2d 1058 (1959)).

Here, the Defendants argue that the Plaintiff is seeking a determination that a New York
State statute is unconstitutional pursuant to both the federal and New York State constitutions.
Thus, the Defendants assert that the question of the constitutionality of a New York State statute
is better placed in the New York State court system. On the other hand, the Plaintiff argues that
there is no public policy or comprehensive regulations at issue in this case. Rather, she states
that her Section 1983 claim only seeks, in part, to hold a state statute unconstitutional.

The Court agrees with the Plaintiff that Burford abstention is inapplicable here. A
number of United States Supreme Court cases have "illustrated the narrow range of
circumstances in which Burford can justify the dismissal of a federal action." Quackenbush v.
Allstate Ins. Co., 517 U.S. 706, 726, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996).

The first factor—the degree of specificity of a state regulatory scheme— "focuses more
on the extent to which the federal claim requires the federal court to *meddle* in a complex state
scheme." Id. (emphasis in original). Here, the Plaintiff's federal claims would not require this
Court to meddle in a complex statutory scheme. Instead, the Plaintiff's Section 1983 and
declaratory judgment claims seek a determination that the statutory scheme and the SPCA's
actions violate the Constitution. Burford "does not require abstention whenever there exists . . . a
[complex state administrative process] or even in all cases where there is a 'potential for conflict'
with state regulatory law or policy." NOPSI, 491 U.S. at 362, 109 S. Ct. 2506. While Burford
should be utilized as a prevention tool to stop the interference with processes of state
government, "there is . . . no doctrine requiring abstention merely because resolution of a federal

question may result in the overturning of a state policy.'" Id., 491 U.S. at 363, 109 S. Ct. 2506

(quoting Zablocki v. Redhail, 434 U.S. 374, 380 n.5, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978)).

As for the second factor—the debatable interpretation of a state statute—this factor does

weigh in the other direction.  The Plaintiff does not merely seek a determination that the SPCA

applied the relevant state statute unconstitutionally.  She also seeks a determination that a state

statute is facially unconstitutional.  This could arguably "put the federal court into the business of

interpreting the state regulatory regime." Hachamovitch, 159 F.3d at 698."

Finally, with regard to the third factor—whether the subject matter of the litigation is

traditionally one of state concern—it is undeniable that the constitutionality of a state criminal

procedure law is a matter of extreme importance to the State.  This is especially so when state

constitutionality as well as federal constitutionality is at issue.  On the other hand, Burford

abstention is not required "even in cases where the state has a substantial interest if the state's

regulations violate the federal constitution." Hachamovitch, 159 F.3d at 698.

Therefore, although it is a close issue, the Court finds that Burford is inapplicable to the

instant case.  The Defendants' motion to dismiss on this ground is denied.

## 2. **Pullman** Abstention

Pullman abstention prohibits federal courts from resolving a federal constitutional issue

when a state court's clarification of an ambiguous state law might make the federal court's

constitutional ruling unnecessary. See R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61

S. Ct. 643, 85 L. Ed. 971 (1941).  In other words, "[t]he Pullman doctrine requires that 'federal

courts should abstain from decision when difficult and unsettled questions of state law must be

resolved before a substantial federal constitutional question can be decided.'" Williams v.

Lambert, 46 F.3d 1275, 1281 (2d Cir. 1995) (citing Hawaii Hous. Auth. v. Midkiff, 467 U.S.

229, 236, 104 S. Ct. 2321, 81 L. Ed. 2d 186 (1984)).  According to the Second Circuit, "[t]hree

basic conditions must be present to trigger <u>Pullman</u> abstention: 'First, the state statute must be

unclear or the issue of state law uncertain; second, resolution of the federal issue must depend

upon the interpretation given to the ambiguous state provision; and third, the state law must be

susceptible of an interpretation that would avoid or modify the federal constitutional issue.'" <u>Id.</u>

(citing <u>United Fence & Guard Rail Corp. v. Cuomo</u>, 878 F.2d 588, 594 (2d Cir. 1989)).

 The Defendants assert that the causes of action set forth by the Plaintiff clearly fit the

<u>Pullman</u> abstention doctrine.  In particular, they argue that the Plaintiff has acknowledged that

there is an ambiguity with regard to the public versus private entity status of the SPCA, which is

currently at issue in the pending Article 78 proceeding.  Furthermore, the Defendants contend

that the resolution of this issue in the Article 78 proceeding is "completely intertwined" with the

issues pending in this case, namely (1) whether the law conferring peace officer powers to SPCA

volunteers is unconstitutional; and (2) whether the SPCA is a "state actor", which is a

prerequisite to award Section 1983 damages.  The Plaintiff asserts that the <u>Pullman</u> doctrine also

does not apply because there is no allegation that a state statute is either ambiguous or unsettled.

 The Court must first ask whether the Defendants have identified any unclear provisions

of state law whose interpretation would avoid or modify the constitutional issues presented.

Here, the Defendants do not contend that the state statute, or the regulations implementing it, is

ambiguous.  "'[W]here a state statute is unambiguous the court must perform its adjudicative

duty and has no right to abstain merely because a state court decision might render a federal

adjudication unnecessary.'" <u>Alliance of Am. Insurers v. Cuomo</u>, 854 F.2d 591, 602 (2d Cir.

1988) (quoting <u>McRedmond v. Wilson</u>, 533 F.2d 757, 761–62 (2d Cir. 1976)).  The Plaintiff has

initiated an Article 78 proceeding to discern whether the SCPA is a public entity for purposes of

the FOIL statute.  However, there is no particular state statute that is unclear or uncertain.

Further, even if there was, the Plaintiff is correct in pointing out that this would have no bearing

on the Section 1983 cause of action.  For this reason, the Defendants' motion to dismiss the

present case on the ground of the <u>Pullman</u> abstention doctrine is denied.

### 3. <u>Younger</u> Abstention

"The <u>Younger</u> abstention rule refers to the principle of federalism that 'a federal court

may not enjoin a pending state criminal proceeding in the absence of special circumstances

suggesting bad faith, harassment or irreparable injury that is both serious and immediate.'"

<u>Pathways, Inc. v. Dunne</u>, 329 F.3d 108, 113–14 (2d Cir. 2003) (quoting <u>Kirschner v. Klemons</u>,

225 F.3d 227, 233 (2d Cir. 2000)).  The principles enunciated in <u>Younger</u> have been expanded to

civil proceedings.  <u>See Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 594, 95 S. Ct. 1200, 43 L. Ed. 2d

482 (1975); <u>see also Moore v. Sims</u>, 442 U.S. 415, 423, 99 S. Ct. 2371, 2377, 60 L. Ed. 2d 994

(1979) ("the basic concern—that threat to our federal system posed by displacement of state

courts by those of the National Government—is also fully applicable to civil proceedings in

which important state interests are involved.").  In <u>Middlesex County Ethics Committee v.</u>

<u>Garden State Bar Association</u>, the Supreme Court stated that "[t]he policies underlying <u>Younger</u>

are fully applicable to noncriminal judicial proceedings when important state interests are

involved."  457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982) (citing <u>Moore</u>,

442 U.S. at 423, 99 S. Ct. at 2377).

Notably, in the "interests of comity and federalism," the <u>Younger</u> abstention doctrine

requires federal courts to abstain from jurisdiction "whenever federal claims have been or could

be presented in ongoing state judicial proceedings that concern important state interests."

<u>Hawaii Hous. Auth. v. Midkiff</u>, 467 U.S. 229, 237–38, 104 S. Ct. 2321, 81 L. Ed. 2d 186 (1984).

Accordingly, Younger abstention "does not apply when a plaintiff's federal claims cannot be presented in pending state proceedings." Tellock v. Davis, No. 02 Civ. 4311, 2002 WL 31433589, at *4 (E.D.N.Y. Oct. 31, 2002) (citing Kirschner, 225 F.3d at 233).

Younger is not based upon an Article III requirement, but instead is a "prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." Spargo v. New York State Com'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003); see Benavidez v. Eu, 34 F.3d 825, 829 (9th Cir. 1994) ("Younger abstention is not jurisdictional, but reflects a court's prudential decision not to exercise jurisdiction which it in fact possesses.") (emphasis omitted); Schachter v. Whalen, 581 F.2d 35, 36 n.1 (2d Cir. 1978) (per curiam) ("Younger abstention goes to the exercise of equity jurisdiction, not to the jurisdiction of the federal district court as such to hear the case."). The rationale behind Younger was set forth by the Second Circuit in Spargo v. New York State Com'n on Judicial Conduct:

> "Our Federalism" in its ideal form, as the Supreme Court explained in Younger, strives towards a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. In recognition of this balance of interests, Younger generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction. Giving states the first opportunity . . . to correct their own mistakes when there is an ongoing state proceeding serves the vital purpose of reaffirm[ing] "the competence of the state courts" and acknowledging the dignity of states as co-equal sovereigns in our federal system.

351 F.3d at 75 (internal quotations and citations omitted).

With this doctrinal framework in mind, the Second Circuit has instructed that "Younger abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an

20

important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims". Id.

The Defendants do not make any specific arguments regarding the Younger doctrine and its applicability here. Rather, they merely mention it in passing. The Plaintiff's position is that Younger only applies when a party is asking a court to enjoin or stay a state court action. While the Plaintiff's position is not correct, the Younger abstention doctrine is nonetheless inapplicable because the parallel state proceeding at issue here is remedial, not coercive.

"In the paradigm situation calling for Younger restraint, the state defendant brings a federal action challenging the statute [which is simultaneously being applied against him]." Fernández v. Trías Monge, 586 F.2d 848, 851 (1st Cir. 1978); see, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (federal plaintiff seeking to enjoin state plaintiff from enforcing judgment against him); Moore v. Sims, 442 U.S. 415, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979) (federal plaintiffs seeking to enjoin state proceedings against them for child abuse). As noted by the Sixth Circuit, "Younger cases generally have a common procedural posture". Devlin v. Kalm, 594 F.3d 893 (6th Cir. 2010).

> In the typical Younger case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings.

Crawley v. Hamilton County Comm'rs, 744 F.2d 28, 30 (6th Cir. 1984).

This is not the situation presented by the case at bar. Rather, the parallel state and federal civil actions were initiated by the same private party. Consequently, the Court faces the thorny issue of whether this is the type of case that warrants abstention under Younger. In particular, the Court must determine whether the state proceeding is "the type of proceeding to which Younger applies," New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S.

350, 367, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989), which normally means "state criminal

prosecutions" or "civil enforcement proceedings," id. at 368, 109 S. Ct. 2506.

In the Younger context, a number of federal courts, as well as legal commentators, have

focused on the distinction between state remedial actions and coercive actions.  The dichotomy

largely stems from a footnote found in the Supreme Court case of Ohio Civil Rights Commission

v. Dayton Christian Schools, 477 U.S. 619, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986), which

stated that:

> The lower courts have been virtually uniform in holding that the Younger
> principle applies to pending state administrative proceedings in which an
> important state interest is involved....
>
> The application of the Younger principle to pending state administrative
> proceedings is fully consistent with Patsy [ v. Board of Regents of the State of
> Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) ], which holds that
> litigants need not exhaust their administrative remedies prior to bringing a § 1983
> suit in federal court. Unlike Patsy, the administrative proceedings here are
> coercive rather than remedial, began before any substantial advancement in the
> federal action took place, and involve an important state interest.

Id., 477 U.S. at 627 n.2, 106 S. Ct. at 2723.  Thus, based upon this language, "some courts [in

determining whether to abstain,] evaluate whether the federal plaintiff is involved in a 'coercive'

state proceeding, in other words a state-initiated enforcement action in which the plaintiff does

not have a choice to participate, or a 'remedial' proceeding in which the plaintiff initiated an

option to seek a remedy for the state's wrongful action."  Eric Turner, Comment, You Say

Remedial, I Say Coercive, Let's Call the Whole Thing Off: Why the Remedial/Coercive

Distinction Is Not Critical in Younger Abstention, 49 Washburn L.J. 629, 641 (2010).  One

district court case from the Third Circuit has defined the dichotomy between remedial and

coercive proceedings as follows: "In remedial state proceedings, the plaintiff is attempting in

both state and federal courts to vindicate a wrong inflicted by the state; in coercive state

22

proceedings, the federal plaintiff is the state court defendant, and the state proceedings were initiated to enforce a state law."  Remed Recovery Care Ctrs. v. Twp. of Worcester, No. 98 Civ. 1799, 1998 WL 437272, at *3 (E.D. Pa. July 30, 1998) (citations omitted).

The circuits are not uniform in their application of the remedial/coercive distinction in the abstention context.  As one commentator has noted, circuits disagree not only about whether the coercive-remedial distinction matters, but also how to tell the difference.  Turner, supra, at 641. Nevertheless, many circuits that have addressed the issue have found the distinction to be a crucial one, especially when the remedial nature of the state court proceeding is apparent.

The Second Circuit has not expressly ruled on this issue, but any inferences drawn from its opinions appear to indicate that the distinction is one that is valid.  Compare Bethphage Lutheran Serv., Inc. v. Weicker, 965 F.2d 1239 n.2 (2d Cir. 1992) ("Moreover, under Younger . . . and its progeny, abstention is appropriate to avoid federal court interference with pending state "coercive" proceedings.") with Univ. Club v. City of N.Y., 842 F.2d 37, 42 (2d Cir. 1988) ("Union League contends that because the commission's proceedings are civil rather than criminal, they are 'remedial' rather than 'coercive'.  This argument has no merit . . . We have little difficulty concluding that the commission proceedings here are coercive in nature; indeed, that is precisely what Union League is concerned about.").  Moreover, at least one district court in this Circuit has explicitly embraced it.  See, e.g., OMYA, Inc. v. Vermont, 80 F. Supp. 2d 211, 215 (D. Vt. 2000).  In OMYA, the District Court of Vermont highlighted that "the Younger line of cases uniformly involves state actions brought by the state against the federal plaintiff."  Id. at 215.  The OMYA court went on to note that a "notably different procedural posture" presented itself in that case:

> Here, OMYA has brought suit in state court challenging the legality of the permit restrictions placed on it by the Environmental Board. Defendants have admitted

23

that there is no pending threat of prosecution or enforcement in this case. The Younger line of cases is solely concerned with preventing Defendants in state court from circumventing state prosecution or enforcement by way of federal judicial intervention.

Id. at 216.  Thus, the Court "declined to extend Younger to cases that involve proceedings in state court which were initiated by the federal Plaintiff." Id.  But see Liberty Mut. Ins. Co. v. Hurlbut, No. 08 Civ. 7192, 2009 WL 604430, at *4 (S.D.N.Y. March 9, 2009) ("In addition, the fact that the proceedings are between private parties does not preclude abstention, as the state has an interest here that goes beyond its interest as adjudicator of wholly private disputes.") (internal quotation and citation omitted).

Certainly, this distinction is one that has been criticized.  See Turner, supra ("Whether a proceeding is remedial or coercive should not be an all or-nothing, either-or question but rather one of degree relevant for measuring the state's interest. . . . Proceedings necessary for the vindication of important state policies encompass remedial proceedings in which the state defends its policies against allegations of wrongdoing"); Taylor G. Selim, Note, Remedial and Coercive Administrative Proceedings Under Younger: The Tenth Circuit's Test in Brown v. Day, 2010 BYU L. Rev. 267 (2010).  In addition, the fact that not every Circuit is in line with this thinking is an important consideration.  Compare Alleghany Corp. v. Haase, 896 F.2d 1046, 1053 (7th Cir. 1990) (finding the distinction matters in a decision to hear the federal suit), and Gordon v. E. Goshen Twp., 592 F. Supp. 2d 828, 842 (E.D. Pa. 2009) (declining to apply Younger abstention on the ground that plaintiffs' state case was a remedial action in a case involving residents seeking an injunction to stop an ordinance from allowing deer hunting with a bow in township) with Alleghany Corp. v. McCartney, 896 F.2d 1138, 1145 (8th Cir. 1990) (finding distinction does not matter in decision to abstain).

24

**SPA25**

Nonetheless, whether looking at the initiating party or the underlying nature and substance of the proceedings, the state court actions here are clearly remedial.  See Brown v. Day, 555 F.3d 882, 896 (10 Cir. 2009) (Tymokovich, J., dissenting) ("By making the distinction turn on the underlying nature and substance of the administrative proceedings, we can ensure Younger abstention applies only to proceedings—like criminal prosecutions—of paramount importance to the state.").  The Court finds that these are not the type of parallel state court proceedings for which a federal court must abstain under Younger.  See Devlin, 594 F.3d at 895 ("Accordingly, Younger does not prevent the federal court from ruling on Devlin's claims in the present suit because Devlin is the plaintiff in both the federal and state proceedings, and Devlin does not seek to enjoin the state proceedings or otherwise use the federal court to shield him from state enforcement efforts.").  "The jurisdictional sword that sustains federal rights should not be swiftly sheathed simply because a concurrent parallel attack has been mounted in the state courts."  United Fence & Guard Rail Corp. v. Cuomo, 878 F.2d 588, 595 (2d Cir. 1989).

Therefore, because the state court actions initiated by Kanciper are remedial, the Court finds that Younger abstention is not applicable to the instant case.  Accordingly, the Defendants' motion to dismiss on this ground is denied.

**C.  Claim Splitting**

Finally, the Defendants argue that because the same nexus of facts forms the basis of the Suffolk State Court Action and the instant action, and thus there are two concurrently pending lawsuits in two jurisdictions based on identical underlying facts under differing theories of liability, this constitutes impermissible claim splitting so that this case must be dismissed.

25

### 1.   The Relevant Legal Principles

The Supreme Court has stated that principles "of *res judicata* and collateral estoppel caution the civil plaintiff against splitting his case." Ashe v. Swenson, 397 U.S. 436, 456, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) (Brennan, J. concurring).  This is because it is a "well-established rule that a plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories." Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000); see Am. Stock Exchange v. Mopex, Inc., 215 F.R.D. 87, 91 (S.D.N.Y. 2002) ("It is well established, under the doctrine of 'claim splitting,' that a party cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits.  Rather, a party must bring in one action all legal theories arising out of the same transaction or series of transactions.") (citations omitted). "The penalty for violation of this rule is that the adjudication reached on the first action is, under the doctrine of *res judicata*, a bar to the maintenance of the second one.  Not only is a second suit barred, but also the plaintiff in the first action cannot subsequently seek to benefit from the residue of his or her claim by way of offset in an action against him or her by the opposite party."  1 Am. Jur. 2d Actions § 103.

There is no question that district courts have discretion to control their dockets by dismissing duplicative cases.  See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) ("As between federal district courts . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."); Ritchie v. Landau, 475 F.2d 151, 156 (2d Cir. 1973) ("Courts should not permit splitting of causes of action when the result of doing so could result in vexatious litigation for the defendant and an undue clogging of the dockets of the court."); see also Elgin v. Dep't of Treasury, -- U.S.

---, 132 S. Ct. 2126, 2135 (2012) ("a tribunal generally has discretion to decide whether to dismiss a suit when a similar suit is pending elsewhere." (citing 18 C. Wright et al., Federal Practice and Procedure § 4406 (2d ed. 2002 and Supp. 2011)).

In 1894, the Supreme Court explained the notion of claim-splitting as follows:

> When the pendency of a [previously filed] suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same.

The Haytian Republic, 154 U.S. 118, 124, 14 S. Ct. 992, 38 L. Ed. 930 (1894) (quotation omitted); see Stone v. Dep't of Aviation, 453 F.3d 1271, 1278 (10th Cir. 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common law rule of claim preclusion prohibiting the splitting of actions."). As the Second Circuit has more recently stated in exploring the rationale underlying this doctrine, "[t]his rule against claim splitting is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times." AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 73 (2d Cir. 2003) (internal citation and quotation omitted).

In sum, "when two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action . . . , regardless of which action was first brought." Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008). On the other hand, claim splitting does "not invariably eliminate the possibility of simultaneous proceedings, for a tribunal generally has discretion to decide whether to dismiss a suit when a similar suit is pending elsewhere." Elgin, 132 S. Ct. at

2126 (citing 18 C. Wright et al., Federal Practice and Procedure § 4406 (2d ed. 2002 and Supp. 2011)).

"New York . . . embrace[s] this general prohibition against claim-splitting."  In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig., 209 F.R.D. 323, 339 (S.D.N.Y. 2002); see Sannon-Stamm Assoc., Inc. v Keefe, Bruyette & Woods, Inc., 68 A.D.3d 678, 890 N.Y.S.2d 828 (1st Dep't 2009) ("The doctrine of *res judicata* may be invoked in instances of claim splitting to prohibit a plaintiff from bringing an action for only part of his claim; the judgment obtained in that action would preclude him from bringing a second action for the residue of the claim"); Pfeiffer v. Allstate Insurance Co., 136 A.D.2d 532, 523 N.Y.S.2d 152 (2d Dep't. 1988) ("With respect to a single matter, there should not be more than a single lawsuit so as to prevent harassing and vexatious litigation.").  In particular, New York law follows § 61 of Restatement of Judgments, Second which provides:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (citations omitted), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

> (2) What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', [sic] are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.

Reilly v. Reed, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172, 176 (1978) (quoting Restatement of Judgments, Second (Tent. Draft No. 1, 1973), § 61, Dimensions of 'Claim' for

**SPA29**

Purposes of Merger or Bar General Rule Concerning 'Splitting'); see also Chase v. Scalici, 97 A.D.2d 25, 468 N.Y.S.2d 365 (2d Dep't 1983).

The first major concern that the Court must address is that the state action at issue is still pending. Thus, there is no final judgment yet in order to warrant traditional concerns of *res judicata*. In this regard, the Plaintiff points out that there can be no claim splitting as long as there is no final judgment in the other case.

Nevertheless, as the Tenth Circuit has previously determined, the Court now finds that "[w]hile it is correct that a final judgment is necessary for traditional claim preclusion analysis, it is not required for the purposes of claim splitting." Katz v. Gerardi, 655 F.3d 1212, 1218 (10th Cir. 2011) ("While we analyze claim splitting as an aspect of *res judicata*, the claim-splitting doctrine does not fall within a conventional *res judicata* analysis."); see Curtis, 226 F.3d at 138 ("The rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or *res judicata*."). Claim splitting focuses on a district court's "comprehensive management of its docket", as opposed to *res judicata*, which focuses on "protecting the finality of judgments." Katz, 655 F.3d at 1218.

Therefore, contrary to the Plaintiff's reasoning that claim-splitting is inapplicable here where there is no final judgment in the Suffolk County Action or the Article 78 proceeding, "in the claim-splitting context, the appropriate inquiry is whether, *assuming that the first suit were already final*, the second suit could be precluded pursuant to claim preclusion." Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp., 296 F.3d 982, 987 n.1 (10th Cir. 2002) (emphasis added); see Salib v. I.C. System, Inc., No. 01 Civ. 1083, 2002 WL 31060368, at *2 (D. Conn. July 24, 2002) ("A dispositive motion based on improper claim-splitting 'need not—indeed,

often cannot—wait until the first suit reaches final judgment.'" (quoting Hartsel, 2002 WL 1554456 at *3, n. 1).

Although it does not appear that the Second Circuit has expressly embraced this notion, the Court finds the Tenth Circuit's analysis in Katz to be persuasive.  Specifically, this rule makes sense, "given that the claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation.  If the party challenging a second suit on the basis of claim splitting had to wait until the first suit was final, the rule would be meaningless. The second, duplicative suit would forge ahead until the first suit became final, all the while wasting judicial resources."  See Katz, 655 F.3d at 1218–1219 ("Our precedent cannot be clearer: the test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit."); see also Brady v. UBS Fin. Svc., Inc., 538 F.3d 1319, 1327 n.10 (10th Cir. 2008) ("The first suit need not reach final judgment before a motion to dismiss based on improper claim-splitting can be granted.").

Consequently, the Court will proceed to assess whether if the Court assumes the finality of the Suffolk County Action and the Article 78 proceeding, whether duplicative claims have been asserted here so that *res judicata* would apply.  See, e.g., Am. Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87 (S.D.N.Y. 2002); Bull & Bear Group, Inc. v. Fuller, 786 F. Supp. 388 (S.D.N.Y. 1992).  In order to do so, the Court looks to whether a New York State court would give preclusive effect to a hypothetical judgment in the Suffolk County Action.  See Allen, 449 U.S. at 96, 101 S. Ct. 411 (noting that under 28 U.S.C. § 1738, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.").

**SPA31**

### 2. As to Res Judicata

Under New York law, courts utilize a transactional approach to *res judicata*, which prevents parties to the prior action or those in privity with them "from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." Schulz v. Williams, 44 F.3d 48, 53 (2d Cir. 1994) (citing Reilly v. Reed, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172, 176 (1978)). In New York "[i]t is blackletter law that a valid final judgment bars future actions between the same parties on the 'same cause of action.'" Id. at 174 (quoting 50 C.J.S. Judgments § 598). "'Once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" Yoon v. Fordham Univ. Faculty and Admin. Retirement Plan, 263 F.3d 196, 200 (2d Cir. 2001) (quoting O'Brien v. City of Syracuse, 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158, 1159 (1981)); see Reilly at 175 (mandating that application of the *res judicata* doctrine is appropriate "when the two causes of action have such a measure of identity that a different judgment in the second [action] would destroy or impair rights or interests established by the first [action].") (quoting Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N.Y. 304, 165 N.E. 456, 457 (1929) (Cardozo, C.J.)). However, "a later claim arising from the same nucleus of facts as a previously adjudicated claim is not barred if the initial forum lacked the power to grant the full measure of relief sought in the later litigation." Pack v. Artuz, 348 F. Supp. 2d 63, 69 (S.D.N.Y. 2004). New York courts have held that *res judicata* principles are not to be applied "mechanically;" rather "the analysis requires consideration of the 'realities of the litigation.'" Nat'l Fuel Gas Distribution Corp. v. TGX Corp., 950 F.2d 829, 839 (2d Cir. 1991) (quoting Staatsburg Water

**SPA32**

Co. v. Staatsburg Fire Dist., 72 N.Y.2d 147, 527 N.E.2d 754, 531 N.Y.S.2d 876 (1988) (quotations omitted)).

There are three factors relevant to the "same transaction" inquiry: (1) "whether the underlying facts are related in time, space, origin, or motivation[;]" (2) "whether they form a convenient trial unit[;]" and (3) "whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (internal quotation marks and citation omitted).

Here, the Plaintiff urges this Court to focus not on general *res judicata* principles, but on its limitations. According to the Plaintiff, *res judicata* does not apply in § 1983 suits with respect to claims that could have been but were not raised in the prior state suit. Here, the Plaintiff points to a decision from a district court in the Southern District of New York from 1978, where it stated that"[t]his exception to the *res judicata* doctrine in civil rights suits is based in part on the policy that § 1983 relief was intended to be supplemental to state relief and that plaintiffs should be able to utilize both federal and state forums when one cause of action gives rise to state and federal claims. . . . Similarly, to effectuate this policy, civil rights plaintiffs are not required to exhaust their state judicial remedies." Williams v. Sclafani, 444 F. Supp. 906, 915 (S.D.N.Y. 1978) (citing Lombard v. Board of Education, 502 F.2d 631 (2d Cir. 1974), cert. denied, 420 U.S. 976, 95 S. Ct. 1400, 43 L. Ed. 2d 656 (1975); Newman v. Board of Education, 508 F.2d 277 (2d Cir.) (per curiam), cert. denied, 420 U.S. 1004, 95 S. Ct. 1447, 43 L. Ed. 2d 762 (1975); Morpurgo v. Board of Higher Education, 423 F. Supp. 704, 710 (S.D.N.Y. 1976)).

However, this blanket exception does not appear to represent the current or accurate state of the law. It seems to have been modified by the Supreme Court decision in Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 84, 104 S. Ct. 892, 898 (1984), where the Court

32

stated that "we must reject the view that § 1983 prevents the judgment in petitioner's state-court proceeding from creating a claim preclusion bar in this case." Indeed, as recently as 2007, the Second Circuit stated that "a state court judgment will have a preclusive effect on a subsequently filed § 1983 action where the § 1983 claims could have been raised in the state court action." Dyno v. Village of Johnson City, 240 Fed. App'x 432, 434 (2d Cir. 2007); see generally, Martin A. Schwartz & Kathryn R. Urbonya, Section 1983 Litigation 165 (2d ed. 2008) ("[u]nder the full-faith and credit statute, 28 U.S.C. § 1738, federal courts in § 1983 actions must give state court judgments the same preclusive effect they would receive in state court under state law") (citing Migra v. Warren City Sch. Dist., 465 U.S. 75, 81, 104 S. Ct. 892, 79 L.Ed.2d 56 (1984)); see also Coolidge v. Coates, No. 06 Civ. 92, 2006 WL 3761599, at *3 (D. Vt. Nov. 20, 2006) ("The doctrine of *res judicata* bars parties from litigating in a subsequent action issues that were or could have been litigated in an earlier proceeding, . . . and applies equally to constitutional claims arising under § 1983 which could have been argued in an earlier state court proceeding.").

Here, the Court finds that the Plaintiff's Section 1983 claims against the SPCA, Gross, and Norkelun should be dismissed under the principle of claim splitting, on the basis that these claims would be barred by *res judicata* if the Suffolk County Action were to reach a final judgment. The requirement that the "the previous action involve[s the party against whom *res judicata* is invoked] or its privy" is met. Kanciper is one of the plaintiffs in the state action and the SCPA, Gross, and Norklun are defendants. Second, the claims involved could be raised in the state action. "State courts as well as federal courts have jurisdiction over § 1983 cases." Howlett v. Rose, 496 U.S. 356, 358, 110 S. Ct. 2430, 2433, 110 L.Ed.2d 332 (1990). Finally, both the state court litigation and this case arise from the same transaction or series of events: the SPCA's and its agents' actions with regard to the execution of a search warrant on Kanciper's

33

property and her subsequent arrest.  Thus, the issues presently before the Court arise out of the same factual grouping as the issues to be adjudicated in state court.  The allegations here are "co-terminus as to time, space, origin and effect, [and] many of the critical supporting allegations are identical."  John Street Leasehold, LLC v. Capital Management Resources, 154 F. Supp. 2d 527 (S.D.N.Y. 2001).  In addition, Kanciper's claims in both actions would be a convenient trial unit because the witnesses and the evidence in both cases would be substantially the same.

While certainly the Plaintiff here is asserting a different legal theory, Section 1983, that is of no matter.  Under the doctrine of *res judicata*, "a prior decision[,which the court assumes for purposes of claim splitting analysis,] is binding. . . in all subsequent litigation between the same parties on claims arising out of the same facts, *even if based upon different legal theories or seeking different relief on issues which were or might have been litigated in the prior action but were not*."  N. Assur. Co. of Am. v. Square D. Co., 201 F.3d 84, 87 (2d Cir. 2000) (emphasis added), quoting EFCO Corp. v. U.W. Marx, Inc., 124 F.3d 394, 397 (2d Cir. 1997); see also Reilly, 45 N.Y.2d at 30 (holding that, "where the same foundation facts serve as a predicate for each proceeding, differences in legal theory and consequent remedy do not create a separate cause of action").

Therefore, because Kanciper could have presented her federal constitutional claims in the state court action, which are claims that arise out of the same transaction, the Section 1983 claims against these three defendants are dismissed without prejudice.  See McPherson, 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006) (concluding that *res judicata* precluded a federal court action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of a foreclosure, when the plaintiff had previously brought a state court action to challenge the judgment of foreclosure).  Cf. Genger *ex rel.* AG Properties Co. v. Sharon, --- F. Supp. 2d ----, 2012 WL 5845553 ("That

**SPA35**

both the state court action and Genger's current claim involved "essentially the same course of wrongful conduct"—Sharon's investment in AG Properties—does not preclude the current action.  Because the Omniway Note involved a separate transaction than the one at issue in the state court action, Genger's current action does not constitute claim-splitting.").

With regard to the two remaining Defendants in this action that are not parties to the Suffolk County Action—Gerald Lauber and Shawn A. Dunn—the Court must determine if these parties are in privity with the other Defendants in order to find that the Section 1983 claims as against them are also precluded by claim splitting.  Under New York law, privity "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly co-parties to a prior action."  Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970).  See Akhenaten v. Najee, LLC, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) ("'The doctrine of privity . . . is to be applied with flexibility. . . . [T]here is no bright line rule' as to whether privity exists for *res judicata* purposes.  'Rather, a finding of privity . . . depends on whether, under the circumstances, the interests of the [defendant] were adequately represented [in the earlier action].'" (quoting Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634, 640 (2d Cir. 1987) (internal citations omitted) (alteration in original))).

In the Court's view, Lauber and Dunn are in sufficient privity with the SPCA and the defendants in the state action so that the Section 1983 claims against them are also barred by principles of *res judicata*.  Any actions that were taken by these Defendants are only alleged to have been taken as within the scope of their duties as SCPA members and/or directors.  See John Street Leasehold, LLC v. Capital Mgmt. Res., L.P., 283 F.3d 73, 75 (2d Cir. 2002); Argenti v. Appelle, 205 F.3d 1321, at *2 (2d Cir. 2000).  As agents of the SPCA and acting solely in their

35

roles as Chief of Detectives or a detective for this organization, it can be safely said that their interests were adequately represented by another vested with the authority of representation—the organization itself—and hence would be bound by a judgment in the first action, even though they were not formally parties to the litigation.  See McCarroll. v. U.S. Fed. Bureau of Prisons, No. 11 Civ. 934, 2012 WL 3940346, at *8 (D. Conn. Sept. 10, 2012) ("Here, the 'newly' added BOP defendants Barbara Darrah, Matthew Ellis and Judy Nichols are ineluctably in privity with the BOP and their co-employees Crystal Kindall, Deborah Schult and Steven Lucas who were Defendants in the NDNY Action.  Courts have long recognized that privity exists between coemployees or employees and their employers for res judicata purposes."); Alaimo v. Gen. Motors Corp., No. 07 Civ. 7624, 2008 WL 4695026, at *5 (S.D.N.Y. Oct. 20, 2008) (holding that plaintiff could not avoid the bar of *res judicata* by adding a General Motors employee as a new defendant in the current action where General Motors was a defendant in the prior state action); Tibbetts v. Stempel, 354 F. Supp. 2d 137, 148 (D. Conn. 2005) ("Generally, an employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued.") (quotation marks omitted).  As such, the Section 1983 claims against Lauber and Dunn are dismissed without prejudice.

However, the Plaintiff does not just bring a Section 1983 claim against the Defendants, which the Court has now dismissed.  She also brings a declaratory judgment action, seeking a declaration that (1) New York Criminal Procedure Law §2.10(7) is unconstitutional, because it unlawfully delegates to a private advocacy group police powers to investigate, search, seize and arrest individual citizens of the United States in derogation of the Fourth and Fifth Amendments as incorporated by the Fourteenth Amendment to the Constitution; and (2) New York State

violated Article IV, Section I, of the New York State Constitution and New York State Executive

Law §§30 and 30 by conferring Peace Officer status on the SPCA without any governmental

oversight or supervision.  These declaratory judgment claims necessarily lead this Court to the

Brillhart abstention doctrine.

The Brillhart abstention doctrine gives a district court broad discretion to determine

"whether and when to entertain an action . . ., even when the suit otherwise satisfies subject

matter jurisdictional prerequisites."  Wilton v. Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137,

2140, 132 L. Ed. 2d 214 (1995).  Under Brillhart, the question for a district court presented with

a declaratory judgment suit, is "'whether the questions in controversy between the parties to the

federal suit, and which are not foreclosed under the applicable substantive law, can better be

settled in the proceeding pending in the state court.'"  Id. (quoting Brillhart, 316 U.S. at 495, 62

S. Ct. at 1176).  Brillhart did not exhaustively lay out all of the factors that a court should take

into consideration when exercising its discretion to hear a declaratory judgment suit, but did

provide some guidance.  For example, in determining whether the claims before it "can better be

settled" in the state proceedings, a district court should examine the scope of the parallel state

litigation and the nature of the defenses available there.  Brillhart, 316 U.S. at 495, 62 S. Ct. at

1176.  A district court should also consider "whether the claims of all parties in interest can

satisfactorily be adjudicated in that [state] proceeding, whether necessary parties have been

joined, whether such parties are amenable to process in that proceeding, etc."  Id.  The Brillhart

decision "indicated that, at least where another suit involving the same parties and presenting

opportunity for ventilation of the same state law issues is pending in state court, a district court

might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to

proceed." Wilton, 515 U.S. at 283, 115 S. Ct. at 2141 (quoting Brillhart, 316 U.S. at 495, 62 S. Ct. at 1176).

In the exercise of this Court's discretion, and yielding to considerations of practicality and wise judicial administration, the Court now declines to take jurisdiction over the remaining declaratory judgment action. As the Supreme Court has noted "[i]n the [federal] system, discretionary refusal to entertain the [declaratory judgment] action frequently occurs when the suit involves a state statute, such as the one here." Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 360, 81 S. Ct. 1570, 1577, 6 L. Ed. 2d 890 (1961). Cf. Perez v. Ledesma, 401 U.S. 82, 91 S. Ct. 674, 27 L. Ed. 2d 701 (1971) ("federal courts should not ordinarily intervene by way of either declaratory or injunctive relief in cases where a state court prosecution exists that began before the federal suit was filed, and the federal court plaintiff alleges only that the state statute being applied to him is unconstitutional.").

Although Brillhart and Wilton involved state law claims in contrast to the addition of a federal constitutional claim raised in the present case, "the Supreme Court in Wilton acknowledged that the boundaries of discretion may extend to cases that involve issues of federal law." Barker v. Ripley, 921 F. Supp. 1213, 1218 (D. Vt. 1996) ("This Court feels that considerations of wise judicial administration, deference to state judicial proceedings and avoidance of duplicative litigation indicate that this matter is better resolved in the pending state proceedings."). Further, while the federal constitutionality of a state statute is at stake, this is highly distinguishable from Youell v. Exxon Corp., 74 F.3d 373, 376 (2d Cir. 1996), where the Second Circuit ruled that whether maritime losses caused by an insured's recklessness are fortuitous— a novel issue of federal admiralty law— would not constitute "[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation" so that

38

<u>Brillhart</u> abstention was inappropriate.  Certainly "a federal question of first impression must all but demand that the federal court hear the case."  <u>Id.</u>.  However, underlying the <u>Brillhart</u> decision was the Court's concern that it was being called upon to pronounce independently upon state law.  "To do so," the Court held, "would be to disregard the limitations inherent in our appellate jurisdiction.  It is not our function to find our way through a maze of [state] statutes and decisions. . . ."  <u>Brillhart</u>, 316 U.S. at 497, 62 S. Ct. at 1176.  That is precisely the situation here.  In addition, it is reasonable to find that the claims before this Court can better be settled in the pending state proceeding, which would provide an adequate forum for the declarations that the Plaintiff seeks.

Therefore, the Court declines to exercise jurisdiction over the remaining declaratory judgment causes of action in the Plaintiff's complaint.

In light of the dismissal of the Plaintiff's Section 1983 claims against the Defendants on the basis of claim splitting and of the Plaintiff's declaratory judgment claims on the basis of <u>Brillhart</u> abstention, the Court now dismisses the Plaintiff's action in its entirety without prejudice.  Thus, the Court need not address the Defendants' motion to dismiss for failure to state a claim.  In addition, the Plaintiff's motion to amend is denied as moot.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motion to dismiss the Plaintiff's Section 1983 causes of action on the ground of claim splitting is granted and these claims are dismissed without prejudice; and it is further

**ORDERED**, that the Plaintiff's causes of action for declaratory judgment are dismissed without prejudice on the ground of <u>Brillhart</u> abstention; and it is further

39

**SPA40**

**ORDERED**, that the Plaintiff's motion to amend is denied as moot; and it is further

**ORDERED**, that the Plaintiff's action is dismissed in its entirety; and it is further

**ORDERED**, that the Clerk of the Court is directed to mark this case as closed.

**SO ORDERED.**
Dated: Central Islip, New York
February 23, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge

**SPA41**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
MONA T. KANCIPER,

                       Plaintiff,                              **JUDGMENT**
                                                       CV-12-2104 (ADS)(ARL)

        - against -

SUFFOLK COUNTY SOCIETY FOR THE
PREVENTION OF CRUELTY TO ANIMALS,
INC., ROY GROSS, GERALD LUBER,
SHAWN A. DUNN, MICHAEL NORKELUN,
JOHN AND JANE DOES 1-10,

                       Defendants.
------------------------------------------------------------X

      A Memorandum of Decision and Order of Honorable Arthur D. Spatt, United States

District Judge, having been filed on February 23, 2013, granting Defendants' motion to dismiss

Plaintiff's Section 1983 causes of action and dismissing these claims without prejudice,

dismissing Plaintiff's causes of action for declaratory judgment without prejudice, denying

Plaintiff's motion to amend as moot, dismissing Plaintiff's action in its entirety, and directing the

Clerk of Court to close this case, it is

      **ORDERED AND ADJUDGED** that Plaintiff take nothing of Defendants; that

Defendants' motion to dismiss Plaintiff's Section 1983 causes of action is granted; that

Plaintiff's Section 1983 causes of action are dismissed without prejudice; that Plaintiff's causes

of action for declaratory judgment are dismissed without prejudice; that Plaintiff's motion to

amend is denied as moot; that Plaintiff's action is dismissed in its entirety; and that this case is

hereby closed.

Dated:  Central Islip, New York
         March 1, 2013

                                       DOUGLAS C. PALMER
                                       CLERK OF THE COURT

                       By:     /s/ Catherine Vukovich
                                    Deputy Clerk

**SPA42**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
MONA T. KANCIPER,

                                   Docket No.
              Plaintiff,         Civ. 12-2104 (ADS)(ARL)

    -against-

SUFFOLK COUNTY SOCIETY FOR THE
PREVENTION OF CRUELTY TO ANIMALS, INC.,
ROY GROSS, GERALD LAUBER,
SHAWN A. DUNN, MICHAEL NORKELUN, and
JOHN AND JANE DOES 1-10.

              Defendants.
--------------------------------------X

<u>**NOTICE OF APPEAL**</u>

    **PLEASE TAKE NOTICE** that plaintiff hereby appeals to the
United States Court of Appeals for the Second Circuit, from the
Memorandum of Decision and Order of the Honorable Arthur D.
Spatt, entered into the docket on February 23, 2013, and from
the Judgment of the Clerk of the Court, entered into the docket
on March 1, 2013.

Dated:   New York, New York
        March 18, 2013


                    McLAUGHLIN & STERN, LLP


                    By: _____
                    Steven J. Hyman
                    Alan E. Sash
                    260 Madison Avenue
                    New York, NY 10016
                    (212) 448-1100
                    *Attorneys for Plaintiff/Appellant*